561 So.2d 144 (1990)
Bahrooz JAFFARZAD, Plaintiff-Appellee,
v.
JONES TRUCK LINES, INC., et al., Defendants-Appellants.
No. 88-378.
Court of Appeal of Louisiana, Third Circuit.
March 14, 1990.
Rehearing Denied April 23, 1990.
Writ Denied June 29, 1990.
*147 Edwards, Stefanski, Barousse, Cunningham, Stefanski & Zaunbrecher, Stephen Stefanski, Homer E. Barousse, Crowley, for Bahrooz Jaffarzad.
Harvey Lee Hall, Baton Rouge, for the State.
Gibbens & Blackwell, J. Louis Gibbens, New Iberia, Thomas Masterson, Jr., Philadelphia, Pa., for Jones Truck Lines and Travelers Ins. Co.
Before DOMENGEAUX, C.J., and LABORDE and KING, JJ.
KING, Judge.
The issues presented by these two consolidated appeals are whether the jury was clearly wrong in its percentage allocation of fault between the parties, in fixing plaintiff's general damages in the sum of $250,000.00, in denying a consortium claim asserted by plaintiff's wife, and in awarding intervenors their claim from the plaintiff's damage award. A subsequent motion to apportion attorney's fees and unreimbursed litigation costs between plaintiff, on his damage award, and his employer and worker's compensation insurer, on their intervention award, present the issue of whether the trial judge erred in apportioning 65% of the attorney's fees and unreimbursed litigation costs to plaintiff's employer and worker's compensation carrier.
On May 1, 1985, Bahrooz Jaffarzad (hereinafter Jaffarzad) filed suit seeking damages for personal injuries received in a two vehicle collision which occurred on January 30, 1985 in Vermilion Parish, Louisiana. On that date, Jaffarzad was driving a van owned by his employer, Shop-Rite, Inc. (hereinafter Shop Rite), when it collided with a tractor trailer rig. The tractor trailer rig was owned by Jones Truck Lines, Inc. (hereinafter Jones), was insured by Travelers Insurance Company (hereinafter Travelers), and was being driven for Jones by David R. Lalande (hereinafter Lalande). The tractor trailer rig jackknifed and entered Jaffarzad's lane of travel where the collision occurred. Farah Samauti Jaffarzad, the wife of Jaffarzad, was not involved in the accident, but joined in the suit in her individual capacity, claiming damages for loss of love, affection, society, and consortium for herself.
Plaintiffs sued Jones, Travelers, and Lalande as defendants. Shop-Rite and its worker's compensation insurer, the Louisiana Employers Safety Association Self Insurers Fund (hereinafter the Self Insurers Fund) intervened to recover worker's compensation benefits and medical expenses paid to Jaffarzad.
Defendants answered the suit denying liability and alternatively pled comparative negligence as a defense. Defendants subsequently asserted a third party demand against the Louisiana Department of Transportation and Development (hereinafter the DOTD), claiming that defects in the highway rendered the tractor trailer rig's braking system ineffective and caused Lalande to lose control of the rig. Plaintiffs thereafter joined the DOTD as an additional defendant.
All claims were tried before a jury during a six day trial, beginning April 7, 1987. At the conclusion of the trial, the jury rendered judgment in favor of Jaffarzad and against Jones, Travelers, Lalande, and the DOTD in the sum of $250,000.00. The jury assessed Jaffarzad with 9% negligence, Jones, Lalande, and Travelers with 81% negligence and DOTD with 6% negligence. The jury further attributed 4% negligence to some person not a party to the lawsuit. The jury entirely rejected the consortium claim of Mrs. Jaffarzad.
On May 12, 1987, the court rendered and signed a written judgment, in accordance with the jury verdict except that the DOTD was assessed by the court with 10% of the fault. The judgment recognized the claim of Shop-Rite and the Self Insurers Fund and ordered the sum of $119,714.85[1] paid *148 to them from plaintiff's award. The defendants' third party demand was also recognized and an award of $22,750.00 was rendered in favor of Jones, Travelers, and Lalande and against the DOTD.
After rendition of the judgment, plaintiffs filed post-trial Motions For Judgment Notwithstanding The Verdict, New Trial, and, Alternatively For Additur. These motions were denied by the trial judge and dismissed at plaintiffs' costs.
Thereafter, plaintiffs appealed, complaining of an inadequate award of damages, the allocation of 9% comparative negligence to Jaffarzad, and rejection of the consortium claim of Mrs. Jaffarzad. The defendants, Jones, Travelers, and Lalande, appealed. The DOTD appealed. The Self Insurers Fund also appealed.
A dispute subsequently arose as to the apportionment of attorney's fees and litigation costs between the awards recovered by Jaffarzad and intervenors. Jaffarzad filed a Motion To Apportion Judgment seeking to recover from intervenors a percentage of the attorney's fees and costs of litigation incurred in bringing this matter to trial. Intervenors filed an opposition to that motion. Following a contradictory hearing, the trial court granted plaintiffs' motion and assessed intervenors 65% of the litigation costs and attorney's fees. This effectively reduced intervenors' recovery from $131,554.78 to $69,463.35. An amended judgment was rendered and signed on December 30, 1988. Intervenors, Shop Rite and the Self Insurers Fund, then filed an appeal seeking a reversal of the trial court judgment which reduced the amount they recovered on their intervention. This later appeal was consolidated by this Court with the prior pending appeals in this matter.[2]
After reviewing the record, we find clear error. Accordingly, we reverse the judgment in part, affirm the judgment in part, amend the judgment in part, and render judgment based on our own independent review of the record and law. On the consolidated supplemental appeal we reverse and render judgment.

FACTS
On January 30, 1985, Jaffarzad was traveling in a southerly direction on U.S. Highway 167, about four miles north of the City of Abbeville in Vermilion Parish, Louisiana. Lalande was driving north on the same highway at approximately 50-55 miles per hour. Lalande had been employed by Jones as a driver for approximately four years before the accident, and was assigned a delivery route generally located within a 50 mile radius of Lafayette. On that day, Lalande had completed his deliveries for the day and was returning to Jones' truck terminal in Lafayette.
Several automobiles preceded Lalande's truck as he approached an intersection near the site of the collision. The automobile immediately in front of his truck was operated by Donna Mahfouz. Belinda Bearb was a passenger in the Mahfouz vehicle. Just before the accident, Donna Mahfouz applied her brakes as one of the automobiles in front of her attempted to make a left turn at the intersection. When Lalande realized the vehicles in front of him were braking, he applied the trailer brakes and then the tractor brakes. The tractor trailer rig skidded 138 feet in the northbound lane and then the tractor jackknifed several feet into the southbound lane. Jaffarzad, who was traveling in the opposite lane, did not have time to apply his brakes and struck the tractor trailer rig on the passenger door of the cab of the tractor. Lalande did not see the van until the "time of impact."
The accident occurred on a level bridge without shoulders located near the intersection. *149 The force of the impact knocked both vehicles partially over the edge of the bridge which crossed a deep drainage canal.
Lalande's version of the accident is the only one available because Jaffarzad lost consciousness after the collision and has no recollection of the events that occurred just prior to impact. Jaffarzad was extracted from his vehicle by an emergency unit and immediately transported to the emergency room of Lafayette General Hospital for treatment.
After Jaffarzad received initial treatment in the emergency room and his condition stabilized, he was transferred to the intensive care unit for four days. He returned for another three days when he experienced respiratory distress. Jaffarzad's initial hospital confinement was from January 30, 1985 through May 8, 1985. He was subsequently hospitalized on two other occasions for additional surgical procedures and has undergone five separate surgical procedures as a result of his injuries.

ALLOCATION OF FAULT
A. Mr. Jaffarzad's Liability
Plaintiffs argue on appeal that the jury's assessment of negligence to Jaffarzad was contrary to the evidence and testimony adduced during the trial. On the other hand, defendants allege the trial testimony establishes that the erratic movements of the Jones truck attempting to slow down were visible at a great distance; therefore, the jury could reasonably have concluded plaintiff was negligent in failing to keep a proper lookout and in failing to take evasive action to avoid hitting the tractor-trailer rig.
Under Louisiana's comparative fault principles set forth in LSA-C.C. Art. 2323, a plaintiff's recovery is reduced by the degree or percentage of fault attributed to him by the trier of fact.
LSA-C.C. Art. 2323 provides:
"When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss."
At the outset we note that a trier's finding as to degree of fault under LSA-C.C. Art. 2323 is a factual matter and should not be disturbed on appeal unless the record establishes that the finding was clearly wrong or an abuse of discretion. Courmier v. Travelers Ins. Co., 486 So.2d 243 (La.App. 3 Cir.1986), writ den., 489 So.2d 250, 251 (La.1986); Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La. App. 3 Cir.1984).
In apportioning fault the trier of fact must consider both the nature of conduct of each party at fault and the extent of the causal connection between the conduct and damages. Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967 (La.1985); Attales v. Shelter Mut. Ins. Co., 488 So.2d 474 (La.App. 3 Cir.1986); Douget v. Allen Parish Police Jury, 520 So.2d 813 (La.App. 3 Cir.1987). A party who relies upon contributory negligence as a defense bears the burden of proving by a preponderance of the evidence that such negligence was a cause-in-fact of the accident. Smith v. Travelers Ins. Co., 430 So.2d 55 (La.1983); Hano v. Louisiana Dept. of Transp. & Development, 519 So.2d 796 (La.App. 1 Cir.1987), writ den., 523 So.2d 861 (La.1988); Conner v. Florida Farm Bureau Cas. Ins., 446 So.2d 383 (La.App. 3 Cir.1984).
With these legal principles in mind, we turn to a review of the pertinent evidence adduced at trial to determine whether the jury committed manifest error in the apportionment of fault.
The evidence relied upon by defendants to establish Jaffarzad's contributory negligence is the deposition testimony of the only witnesses to the accident, Donna Mahfouz and Belinda Bearb. Both witnesses testified that they were able to observe the *150 tractor-trailer rig approach from their rear and that the trailer was rocking from side to side. They also testified that they heard screeching noises and that smoke was clearly visible from the tires directly behind the tractor.
We find that this evidence is insufficient to support the application of comparative fault to reduce Jaffarzad's recovery. Both witnesses testified that La. 167 is a busy highway and that traffic was backed up in the northbound lane due to traffic turning at the intersection near the site of the accident. Mahfouz recalled seeing several cars in Jaffarzad's lane pass by them between the time she began to brake and the time of the accident. Bearb stated Jaffarzad could not be aware of the impending accident until the moment of impact, when Lalande's vehicle suddenly jackknifed.
It is apparent from the record that Jaffarzad was confronted with a sudden emergency created by Lalande's failure to maintain a proper lookout and inability to maintain control of his vehicle. Under the doctrine of sudden emergency, a motorist without sufficient time to weigh all the circumstances and whose actions did not contribute to the emergency cannot be assessed with negligence if a subsequent review of the facts discloses he may have adopted a safer more prudent course of conduct to avoid an impending accident. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972); Bishop v. Shelter Ins. Co., 461 So.2d 1170 (La.App. 3 Cir.1984), writ den., 465 So.2d 737 (La.1985). Defendants failed to present any evidence indicating that Jaffarzad was able to see the truck, or if he could, that there was sufficient time and distance for him to take evasive action. Even if Jaffarzad had seen the truck and could have taken evasive action, all he could have done was attempt to apply his brakes because there were approaching cars in the northbound lane and only a deep drainage canal on the side of the bridge to his right. There was no evidence that he was speeding or that his vehicle even crossed the centerline of the highway. To the contrary, the record is clear that the point of impact was entirely in Jaffarzad's lane of travel. Since defendants failed to establish Jaffarzad's conduct was a cause-in-fact of the accident, we find the jury clearly erred in concluding he was 9% negligent.
B. Admissibility of Expert Testimony
DOTD, as appellant, also argues that the jury and trial judge erred in concluding it was contributorily negligent.
Kenneth Louis Langlinais, the Louisiana State Trooper who investigated the accident, and two reconstruction experts, David Bernard and Lawrence Harry, testified as to the physical evidence at the scene of the accident. Harry, a District Operations Engineer for DOTD, was called as an expert on its behalf. Bernard, a Professor of Physics at U.S.L., was called as an expert witness on plaintiffs' behalf and was, therefore, the first of the experts to testify. After a foundation for his expertise was established, the court accepted Bernard as an expert within the fields of physics, accident reconstruction, and the physics of the accident. Subsequently, counsel for Jones and Travelers objected to the introduction of his testimony on the grounds that it was based on deposition testimony and other second-hand evidence.
The court retired the jury and, out of their presence, questioned Bernard as to the gist of his testimony. From this testimony the trial judge determined that the Traveler's accident report and photographs of the site failed to provide sufficient data, such as the condition of the vehicles' tires and the speed of Jaffarzad's van, for Bernard to accurately give an opinion as to how the accident happened. The court made the following remarks:
"THE COURT: The point is, GentlemenNo offense, Dr. Bernard, but I have a thing about accident reconstruction; that if you're relying on all kinds of things that are unknown or variable, you can't guess any better than I can or the jury can. And most times I don't even let accident reconstruction experts testify.

*151 MR. BAROUSSE: Would you let him testify, Your HonorHe has an opinion based upon his expertise in the area of physics, accident reconstruction
* * * * * *
THE COURT: No. And I'm going to do the same with anybody else's reconstruction expert."
As a result of the trial court's ruling, the testimony of Mr. Harry, the expert for the DOTD was also excluded and was proferred after all the parties presented their case. DOTD contends that the trial court erroneously excluded the testimony of Mr. Harry, their accident reconstruction expert, and that this action unfairly prejudiced the jury's finding of fact in regard to their liability. We agree for the reasons stated below.
The court in Schwamb v. Delta Air Lines, Inc., 516 So.2d 452 (La.App. 1 Cir. 1987), writ den., 520 So.2d 750 (La.1988), set forth the following criteria that must be considered when deciding whether to permit the use of expert testimony:
"To warrant the use of expert testimony, two elements are required; these concern the subject of the expert's opinion or inference, and the qualifications of the tendered witness, respectively. First, `the subject of the inference must be so distinctly related to some science, profession, business or occupation as to be beyond the understanding of the average laymen.' State v. Wheeler, 416 So.2d 78, 80 (La.1982) (emphasis added.) Second `the witness must have sufficient skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier of fact in his search for truth.' Id.; McCormick on Evidence § 13 at 33 (Cleary 3d ed. 1984). The inquiry is: `On this subject can a jury receive from this person appreciable help?' J. Wigmore, Evidence § 1923 at 29 (Chadbourn rev. 1978) (emphasis in original). If not, the testimony is superfluous, and is excluded to save time and avoid confusion. Id., § 1918 at 11.
* * * * * *
A trial judge has broad discretion in determining who should or should not be permitted to testify as an expert and whether expert testimony is admissible; his judgment will not be disturbed on appeal unless manifestly erroneous. See State v. Trosclair, 443 So.2d 1098, 1105 (La.1983); Brown v. Morgan, 449 So.2d 606, 608 (La.App. 1st Cir.1984)." (Footnotes omitted.) Schwamb v. Delta Air Lines, Inc., 516 So.2d 452, at pages 458-459 (La.App. 1 Cir.1987), writ den., 520 So.2d 750 (La.1988).
Trooper Langlinais, who also testified, was not qualified as an accident reconstruction expert. Consequently his testimony was limited to opinions based upon his rational perception of the facts and recollections pertaining to the scene of the accident. Pearce v. Power & Telephone of Kentucky, 533 So.2d 46 (La.App. 3 Cir. 1988), and cases cited therein. He did not have sufficient knowledge to assist the jury in fulfilling one of their primary functionsassessment of liability. The testimony of the reconstruction experts as to the cause of the jackknife and whether road conditions were one of the contributing factors was subject matter beyond the understanding of the average layman. The use of expert testimony was clearly warranted in the instant case. Additionally, the experience and training of both experts in the field of accident reconstruction was sufficient that their opinions would have been an aid to the jury in determining the cause of the accident.[3]
*152 Generally, an appellate court is precluded from reviewing a jury's finding of fact in the absence of manifest or clear error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). However, when a trial court erroneously instructs the jury in law, or makes a consequential error in the exclusion of evidence, the trial court judgment which implements the jury verdict should not be accorded any weight. McLean v. Hunter, 495 So.2d 1298 (La. 1986). When an appellate court has all the facts before it in such situations, it has the constitutional duty to review questions of law as well as facts presented and should render judgment on the record. LSA-Const. Art. V, § 5(C); Art. V, § 10(B); Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975); Rutledge v. Brookshire Grocery Co., 523 So.2d 914 (La.App. 3 Cir. 1988), writ den., 531 So.2d 269 (La.1988). We find that the trial court's exclusion of the expert testimony offered by all parties prejudiced the jury's verdict with regard to DOTD's liability; therefore, we will make an independent review of the record to assess the respective parties' liability, giving due consideration to the improperly excluded testimony which was proffered.
C. DOTD's Liability
One of the primary factual disputes at trial concerned the cause of the accident. Testimony on this issue was presented by Lalande, Mahfouz, Bearb, Trooper Langlinais, Bernard and Harry.
Lalande testified that he was thoroughly familiar with the highway where the accident occurred, traveling the roadway four to six times a week. Although he was aware of the intersection near the accident site, he explained that the sudden application of his brakes was necessitated by an abrupt stop made by the Mahfouz vehicle. He recalled that his truck went into a straight skid and was "almost at a complete stop" when he hit "a rough portion in the road." He further testified that his rig jackknifed to the left after his wheels hit this section of highway.
Mahfouz stated she did not have to brake suddenly and had ample time to stop for the car in front of her. When she began to slow her vehicle, she saw in her rear view mirror that Lalande was having difficulty stopping. She recalled the trailer was rocking from the time she first saw the truck, its movement became progressively more erratic, and smoke was coming from the wheels. She testified that she traveled the highway frequently and did not recall any problems with the roadway in the area of the accident.
Bearb, likewise, stated that the vehicle she was in came to a gradual stop and that she did not recall experiencing any problems with the road, such as raised spots, potholes, or rough areas.
At trial, Trooper Langlanais' testimony was based on photographs taken by him at the accident site and measurements noted in his accident report. One of the photographs, marked Plaintiff's Exhibit I, depicts two parallel light areas in the highway traversing both lanes of traffic. When questioned about this portion of the highway, he responded that he did not think there was a buckle. He also opined that the skid marks made by Lalande's truck started veering off into the southbound lane just past these areas.
Bernard, by the proffer of his testimony, offered the following opinion as to the cause of the accident, which was based on his past experience and measurements contained in the accident report:
"THE WITNESS: Well, I could say certainly that I would expect that 18-wheeler to jackknife. And it does not necessarily mean that there was a bump in the road; not at all. Because over a long distance in skidding they all jackknife. And I've seen it on a brand new section of I-10 do that....
Of course, I calculated the speed of the truck, and it wasn't over-speeding. It just didn't stop soon enough."
*153 Harry, on the proffer of his testimony, testified that he also studied several state police photographs. He particularly examined and studied those marked Plaintiff's Exhibit I, C, and D which clearly show a skid mark in the farthest left portion of the lane, diverging into two separate marks prior to the alleged rough spots. Additionally, he conducted his own measurements at the accident scene in November, 1986. Harry stated the skid marks depicted in the photographs were no longer present at that time, but he was able to ascertain the location and lengths of the skid marks by locating certain landmarks shown in the photogaphs.
Harry measured from the point these marks began to diverge to the first position referred to by defendants as a buckle and calculated this distance to be 27 feet. He interpreted the diversions of the skid marks as indicative that the rear wheels of the tractor had started to turn away from the front wheels and down to the edge of the pavement well before any alleged buckles could be encountered.
Harry testified that two buckles were evident in the photographs but that both had been leveled with a grinder. These grind marks were also apparent when he visited the accident scene. He stated that grind marks leave a type of "fingerprint." He was able to identify these marks and saw no evidence to indicate the road had been releveled after the accident.
Harry spoke of the height of the buckles and found the highest point was only one-half an inch; however, this was distributed over a three foot distance. He concluded that they did not constitute a bump or an irregular surface condition.
Considering the record as a whole, we conclude that Lalande's negligence was the sole proximate cause of the accident. Accordingly, we reverse the judgment attributing fault in the accident, of 9% to Jaffarzad and 10% to DOTD, and assess 100% of the fault to defendants, Jones, Travelers, and Lalande.

QUANTUM
Plaintiffs next contend that the jury's lump sum award of damages in the amount of $250,000.00 to Jaffarzad was inadequate. It was stipulated that Jaffarzad's medical expenses amounted to $100,282.78 and that the intervention of Shop Rite and Travelers at the time of trial totaled $131,554.78.
LSA-C.C. Art. 2324.1 provides:
"In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury."
Before this court can disturb an award made by the trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Perniciaro v. Brinch, 384 So.2d 392 (La. 1980); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Wattigny v. Breaux, 488 So.2d 419 (La.App. 3 Cir.1986). In reviewing an award of damages to determine whether it is inadequate or excessive, the appellate court must first look to the individual circumstances of the case before it. Broussard v. Peltier, 479 So.2d 679 (La.App. 3 Cir.1985). Only after an analysis of the facts reveals an abuse of discretion can the appellate court disturb the award, then only to raise inadequate awards to the lowest amount the trial court could have reasonably awarded, or lower excessive awards to the highest amount the trial court could have reasonably awarded. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco, supra; Clark v. State Farm Ins. Co., 520 So.2d 860 (La.App. 3 Cir.1987); Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3 Cir.1985).
With these legal principles in mind, we will address each claim individually and review the evidence relevant thereto.
A. Physical disabilities, physical and mental pain and suffering
The first element of damages contested by Jaffarzad is the jury's inadequate award for his physical disability and physical and mental pain and suffering. Jaffarzad argues the jury's award was an abuse of discretion, considering the severity of his injuries and that his condition will require *154 surgery for the removal of a ruptured disc.
The medical testimony is uncontroverted that as a result of the accident, Jaffarzad suffered a compound fracture of the femur in his left leg, a contusion to his right leg, lacerations on his left knee area, and deep lacerations to his right knee that extended into the knee joint.
During his initial confinement, Jaffarzad was hospitalized from January 30, 1985, through May 8, 1985. During this period Dr. Charles A. Olivier performed surgery on Jaffarzad on three occasions. On the day of Jaffarzad's admission, surgery was performed to stabilize his condition and to repair the broken femur. A pin was drilled into the left tibia, and that leg was placed in traction. Surgery was also performed on the right knee to repair ligament damage. Thereafter, the right leg was placed in a splint. After the knee started healing, the right leg was placed in a continuous passive motion machine. Dr. Olivier explained that the machine flexes the leg and prevents a loss of strength in the muscles.
On March 12, 1985, a second surgery was performed to remove the pin in the left tibia and to manipulate the right knee. Jaffarzad had surgery again on April 3, 1985 to have the pin reinserted. The pin remained implanted through April 28, 1985, when it was surgically removed and a cast brace applied.
Jaffarzad was discharged by ambulance on May 8, 1985, but was readmitted on July 22, 1985 for corrective surgery to his femur. Dr. Olivier testified that there was a malunion of the femur and that a metal rod had to be inserted through the femur. The rod was later surgically removed after the femur healed properly.
On March 4, 1987, Jaffarzad was readmitted and an orthroscopic surgical procedure performed to determine the extent of damage to his left knee. The examination showed there had been torn knee cartilage but that it had healed.
Dr. Olivier testified that these injuries have left Jaffarzad partially disabled. He assigned a 10-15% functional impairment to plaintiff's left leg and at least 5% disability to his right leg. Dr. Olivier described Jaffarzad's present orthopedic condition as improved but noted that plaintiff is exhibiting signs of degenerative arthritis, which will eventually require surgery to repair. Dr. Olivier made the following statements regarding restrictions he placed on plaintiff's activities:
"A. Well, I think that he can do some walking and probably would be advisable, but I wouldn't say that he should do any prolonged walking. Probably maybe about forty-five (45) minutes to an hour maximum at one time, and he probably should rest.
And he should avoidHe really can't squat due to his left knee, and it wouldn't be advantageous to squat due to his right knee, due to the early arthritis.
What else you asked me?
Q. What about climbing?
A. I think climbing a few simple steps like getting in your house or something like that would be okay, but I wouldn't, you know, get a job where you have to climb a letter [sic] every day or climb up an oil rig or something like that.
Q. How about ascending a flight of stairs?
A. I think if he took his time and he didn't have to do it too often, it would be all right; maybe once a day or something.
Q. What type of other restrictions would you place on his physical activities, given his present condition?
A. Well,
Q. For example, lifting or driving for a prolonged period of time.
A. Well, that would be kind of going along with sitting to drive. I wouldn't drive more than about an hour at a time, and you need to get out of the vehicle and walk around.
In terms of lifting, he is complaining of his back and had complained of his back throughout the injury. We were not able to substantiate any surgical kind of lesion or something like a slipped disc, but *155 probably did have a strain to his muscles in his back.
So usually when people have back trouble we tell them to use their knees to lift something. But he has kind of trouble with his knees and has trouble with his back, so I would say, no, don't lift anything too heavy.
* * * * * *
A. I don't think he can do any manual labor.
Q. And that would include any type of lifting of heavy objects or anything which would require operation of any type of heavy equipment or this type of thing.
A. That's correct.
Q. Could he do kind of light type of work that would, you might say, denote an office type of environment?
A. He probably could.
Q. Would he continue, even doing light office type of work, although he may be able to do that work orthopedically, likely to continue to have pain if he was required to stay in a sitting position for more than an hour?
A. Yes, sir."
Dr. Olivier stated plaintiff complained of back pain from the time of his initial hospitalization but attributed the symptomology to an unbalanced posture and gait caused by his femur injury.
In addition to these injuries, plaintiff was diagnosed as suffering from a herniated disc; the causal connection of this injury and complaints of back and neck pain was a subject of dispute at trial. Dr. Steven James Snatic, a neurologist practicing in Lafayette, Louisiana, treated plaintiff before and after the accident for complaints of pain in the neck and left shoulder. Dr. Snatic initially examined plaintiff in July, 1986. At that time, he performed several neurological tests that yielded normal results. Nevertheless, Dr. Snatic diagnosed plaintiff as having some nerve damage in his neck, which he concluded affected muscles in his left arm. Dr. Snatic did not see plaintiff again until after the accident. Dr. Snatic testified that plaintiff visited his office on November 5, 1985, complaining of headaches on the left side of his head and problems with a nerve on his forehead that had been injured in the collision. Jaffarzad did not complain of pain in his neck or radiating pain during this visit.
Jaffarzad's first complaints of back pain after the accident were conveyed to Dr. Snatic during a subsequent visit in February, 1986. Dr. Snatic ordered X-rays and a CT scan which evidenced a ruptured disc between the fifth and sixth cervical vertebra on the left side. Dr. Snatic never testified that this disc was related to the subject accident; on the contrary, he testified that plaintiff's neck problems may have preexisted the accident and that the neck problems exhibited in July, 1982 may have been disc related.
With respect to future surgery, Dr. Snatic testified that he did not believe it was warranted at this time. Upon cross-examination, he further elaborated that he was not convinced Jaffarzad had radicular pain and opined that he has quite a lot of "functional overlay" which cannot be expected to improve from a surgical procedure. Dr. Snatic defined the condition of functional overlay as a manifestation of symptoms which are not consistent with the neurological problem or illness allegedly suffered by the patient. He described the type of functional overlay experienced by plaintiff as a "giveaway weakness." He explained that giveaway weakness is where a person may initially have a pretty good effort, but all of a sudden this effort fades and the person cannot be motivated to make more than a little bit of effort for a very brief period of time. The limb appears to be very weak where the person does not put forth much effort. He noted the response is unlike that of a person with actual muscle weakness who usually puts forth a sustained effort. However, he added Jaffarzad has been cooperative and was "probably basically complaining of things that are legitimate." Due to his reservations, Dr. Snatic referred Jaffarzad to Dr. Stephen I. Goldware, a neurological surgeon, for further examination.
*156 Dr. Goldware examined plaintiff on March 4, 1986. He testified that plaintiff complained of pain in the neck and upper back area but his chief complaint was low back pain, radiating into the left leg. A myelogram and a CT scan were performed and confirmed Dr. Snatic's diagnosis of herniated cervical disc. The lumbar test, however, appeared normal. Dr. Goldware agreed with Dr. Olivier's assessment that plaintiff will be unable to do manual labor and that his back pains were probably related to his unnatural walking gait. Dr. Goldware further testified that he did not plan to perform surgery in the near future and echoed Dr. Snatic's conclusion that plaintiff's complaints of pain in the upper extremities were exaggerated. He attributed this condition to plaintiff's emotional nature and did not believe plaintiff was a malingerer.
In a personal injury case, the plaintiff bears the burden of proving the existence of injuries and a causal connection between them and the accident. The test is whether plaintiff has shown through medical testimony that more probably than not the subsequent medical treatment was necessitated by the trauma suffered in the accident. Petersen v. State Farm Auto Ins. Co., 543 So.2d 109 (La.App. 3 Cir.1989), writ den., 546 So.2d 1223 (La.1989); Aucoin v. State Farm Mut. Auto Ins. Co., 505 So.2d 993 (La.App. 3 Cir.1987); Wells v. Allstate Ins. Co., 510 So.2d 763 (La.App. 1 Cir.1987).
Applying these precepts to this case, we find Jaffarzad clearly met his burden of proving his orthopedic injuries by medical testimony. The testimony relative to his neurological impairment, however, fails to sufficiently support a finding that these injuries were caused or aggravated by the accident.
After review of the evidence in the record, we find that the jury clearly abused its discretion and made an inadequate award to plaintiff as compensation for his physical disability and physical and mental pain and suffering.
B. Economic Loss
The second element of damages contested by plaintiff is the jury's inadequate award for loss of past and future earnings and diminished earning capacity. Jaffarzad argues the denial of this claim was an abuse of discretion given the uncontroverted expert testimony relative to the issue of wages.
Among the factors to be considered in determining the amount of an award for future economic loss are Jaffarzad's physical condition prior to the accident, his past work record as to consistent employment and the amount of his earnings, and the probability Jaffarzad would have continued to earn wages over the remainder of his working life as he had in the past had he not sustained the injury. Wallace v. Slidell Memorial Hosp., 509 So.2d 69 (La.App. 1 Cir.1987).
Jaffarzad was 31 years old and was in good health when the accident occurred. He was employed as a supervisor by Shop Rite, a convenience grocery store business, and was earning $25,000.00 a year prior to the accident. Jaffarzad was initially hired as a part-time employee but quickly attained the position of supervisor over twelve stores located in the area between Lafayette and Morgan City. His job duties included driving from store to store delivering and unloading heavy merchandise such as shotgun shells, cases of canned goods and motor oil. Mr. Geilen, the President of Shop Rite, described Jaffarzad as an "outstanding" employee but testified that the corporation would not rehire him if he could not do manual labor. At the time of trial, Jaffarzad had not received a medical release to resume working and was still in the care of Drs. Olivier and Goldware.
The record shows that the only expert testimony addressing Jaffarzad's employment potential and wage loss was presented by plaintiffs. Their first witness on the issue was John William Grimes, an expert in the field of rehabilitation and vocational counseling. Dr. Grimes studied Jaffarzad's medical records and the depositions of his treating physicians to establish a vocational profile. In his analysis, he assumed *157 the medical restrictions outlined by Dr. Olivier were valid. Additionally, he considered the results of a series of vocational tests administered to plaintiff, educational background, and his employment history. From this information, Dr. Grimes opined that Jaffarzad could not return to his previous work, and that college, because of language difficulty, would not be a good option, but that plaintiff possessed sufficient abilities to engage in light, semi-skilled or unskilled occupations generally paying from $3.50 to $5.50 per hour.
Mr. Donald W. Cornwell, a consulting economist, also testified on plaintiff's behalf. Mr. Cornwell considered Jaffarzad's age at the time of trial and calculated his work life expectancy to be 31.49 years. Mr. Cornwell testified that he segregated Jaffarzad's economic loss incurred up to the date of trial from that representing the remainder of his projected working life. He determined that the pre-tax wage loss from the date of the accident to the date of trial (2.18 years) to be $59,956.37. This figure included $4,784.93 of lost insurance benefits.
Assuming a probable range of earnings between $3.50 to $5.50 per hour, based on Dr. Grimes' testimony, Mr. Cornwell selected an average of $4.50 per hour earning capacity to estimate future wage loss. Based on this range of probable earnings, Mr. Cornwell estimated that Jaffarzad would have a future pre-tax loss of $450,987.53, which combined with his pre-trial loss amounts to $510,943.90. Mr. Cornwell also supplied computations of after tax losses. However, gross rather than net wages should be utilized when computing wage losses. LeBleu v. Dynamic Indus. Constructors, Inc., 526 So.2d 1184 (La.App. 3 Cir.1988), writ den., 528 So.2d 154 (La.1988); Riley v. Winn-Dixie Louisiana, Inc., 489 So.2d 931 (La.App. 5 Cir. 1986), writ den., 494 So.2d 329 (La.1986). In computing Jaffarzad's future wage loss, Mr. Cornwell applied a growth rate of 5.498% (annual growth rate for Louisiana retail store employees) and then discounted it to allow for 7% interest.
The jurisprudence provides that uncontradicted testimony of a witness should be accepted as true, absent a sound reason for its rejection. Johnson v. Ins. Co. of N. America, 454 So.2d 1113 (La. 1984); Louisiana Power & Light Co. v. Roberts, 408 So.2d 49 (La.App. 3 Cir.1981), writ den., 412 So.2d 1111 (La.1982).
Our review of the record does not reveal any relevant evidence upon which the jury could have reasonably inferred that Jaffarzad was capable of returning to employment before or after the trial in the same capacity and wage level as he experienced prior to the injury. Mr. Cornwell's factual assumptions were supported by uncontroverted medical testimony and his calculations of wage loss based on data published by the State of Louisiana and the U.S. Department of Labor. Moreover, counsel for defendants did not present any contradicting economic expert testimony. Instead, defense counsel only posed to Mr. Cornwell several hypothetical assumptions unsupported by the record.
The jury's award demonstrates that it found that Jaffarzad had sustained some damages, and we agree. However, after careful review of evidence in the record concerning lost wages and Jaffarzad's earning capacity and the testimony of other witnesses, we find that the jury clearly abused its discretion and made an inadequate award to plaintiff as compensation for loss of past and future earnings and diminished earning capacity.
After a clear abuse of discretion in awarding damages is found, an appellate court may consider awards made in the past but only in the mass of them and not on the basis of selected past awards. Our Supreme Court has noted that "no two cases are ever fully alike." Coco, supra, at page 335.
Accordingly, we will raise Jaffarzad's damage award to the lowest amount which we find would have been in the discretion of the trier of fact. Our review of the jurisprudence and the evidence in the record in this case convinces us that the lowest award appropriate under the circumstances *158 is $450,000.00. We therefore amend the award of special and general damages in favor of Jaffarzad to increase it to the sum of $450,000.00. For these reasons, we award Jaffarzad judgment against Jones, Travelers, and Lalonde, in solido, for special and general damages in the sum of $450,000.00.
C. Loss of Consortium
Finally, plaintiffs complain the jury erred in denying Mrs. Jaffarzad's claim for loss of consortium.
The loss of consortium includes such pecuniary elements as loss of services, and such non-pecuniary components as love, companionship, affection, society, sexual relations, comfort and solace. Jinks v. Wright, 520 So.2d 792 (La.App. 3 Cir.1987); Lonthier v. Northwest Ins. Co., 497 So.2d 774 (La.App. 3 Cir.1986). In order to make any award for loss of consortium in this case we must first apply the same two-step procedure articulated in Franklin v. Oilfield Heavy Haulers, 478 So.2d 549 (La. App. 3 Cir.1985), writ den., 481 So.2d 1330, 1331 (La.1986); Coco v. Winston Industries, Inc., supra; Reck v. Stevens, supra.
Shortly after the accident, Mrs. Jaffarzad was summoned to the hospital after being told her husband had been in an automobile accident but was not badly hurt. After arriving at the hospital, she realized the seriousness of her husband's medical condition and lost consciousness upon seeing his bloody legs and the bone protruding through his skin. Mrs. Jaffarzad testified that she stayed with her husband 24 hours a day during the entire 3½ months of his first admission to Lafayette General Hospital. She also stated that her relationship with him was affected when he was in so much pain that he emotionally isolated himself from her. She was by her husband's side during his many surgical procedures, including an initial surgery for internal bleeding, the three surgical procedures during the initial hospital confinement, and an occasion when her husband passed out because of pain while the doctors were attempting to remove a pin from his leg. During this period of time, Mrs. Jaffarzad obviously could not experience the same kind of love, companionship, affection, society, comfort and solace, or sexual relations that she had with her husband before the accident. There was a strain on their marriage. Mrs. Jaffarzad suffered from anxiety and had to help her husband take care of himself. After a careful review of the record, we conclude that the jury abused its discretion when it made no award for loss of consortium to Mrs. Jaffarzad.
Our review of some of the jurisprudence, see, e.g., Morris v. Highland Ins. Co., 525 So.2d 125 (La.App. 3 Cir.1989); Sexton v. Louisiana Vacuum Services, Inc., 506 So.2d 780 (La.App. 1 Cir.1987); Sharp v. Metro Property and Liability Ins., 478 So.2d 724 (La.App. 3 Cir.1985), and the record in this case leads us to believe that the lowest award appropriate under the circumstances is $10,000.00. For this reason, we award Mrs. Jaffarzad judgment for damages against Jones, Travelers, and Lalande, in solido, for damages for the loss of consortium in the sum of $10,000.00

INTERVENORS' CLAIM AND APPORTIONMENT OF LITIGATION EXPENSES AND ATTORNEY'S FEES
The trial court recognized that the intervention claim of Shop Rite and the Self Insurers Fund, which was for reimbursement for worker's compensation benefits previously paid to plaintiff, totaled, as of the date of trial, the sum of $131,554.71, reduced the amount of the intervenors' claim by the plaintiff's 9% comparative negligence found by the jury, and awarded intervenors judgment in the sum of $119,114.85. A formal written judgment to this effect was signed May 12, 1987. Prior to the appeal of this judgment, intervenors filed a motion and supplemental motion to amend the judgment, seeking credit for additional worker's compensation benefits paid after the time of the trial and seeking to eliminate from the judgment for its intervention claim the reduction for the 9% comparative fault of the plaintiff. Also prior to the appeal of the judgment, plaintiff filed against intervenors a motion to *159 apportion his unreimbursed litigation expenses and attorney's fees against the judgment for the intervention recovery. Plaintiffs, Jones, Travelers, Lalande, the DOTD, and the Self Insurers Fund then timely entered devolutive appeals from the May 12, 1987 judgment. After the granting of appeals to the various parties, the trial court conducted a hearing on plaintiffs' and intervenors' motions and entered an amended judgment setting aside the reduction of the judgment for intervenors' recovery by the amount of Jaffarzad's 9% comparative negligence and entered a judgment apportioning 65% of plaintiff's attorney's fees and unreimbursed litigation costs against intervenors' judgment for reimbursement of worker's compensation benefits. A formal written amended judgment to this effect, amending the original judgment in this matter, was signed on December 30, 1987. Intervenors, Shop Rite and the Self Insurers Fund, then timely appealed this amended judgment, by supplemental appeal in this matter,[4] and this court has ordered these appeals consolidated for purpose of appellate review.
The original appeals in this matter by plaintiffs, defendants, and intervenors, as well as the supplemental appeal by intervenors in this matter which has been consolidated with this appeal, present for our review (1) the correctness of the trial court judgment ordering intervenors to be reimbursed, out of the judgment in favor of Jaffarzad and against Jones, Travelers, Lalande, and the DOTD, for the amount of their intervention and also presents for our review (2) the correctness of the apportionment of plaintiffs' unreimbursed litigation expenses and attorney's fees against intervenors' judgment on its claim for reimbursement.
La.R.S. 23:1103 provides in pertinent part:
"In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; ..."
The judgment rendered in favor of plaintiff and against Jones, Travelers, Lalande, and the DOTD was for the sum of $250,000.00 and, though unitemized, was presumably to compensate plaintiff for his medical expenses, physical disabilities, pain and suffering, pre-trial and post-trial loss of wages, and for loss of earning ability.
The trial court reduced intervenors' award for reimbursement for worker's compensation benefits by 65%, based on the trial court's interpretation of Moody v. Arabie, 498 So.2d 1081 (La.1986) and after making an equitable adjustment for the additional work and responsibility of plaintiff's attorney. We find that the trial judge was clearly wrong in calculation of the apportionment of unreimbursed litigation expenses and attorney's fees for the reasons hereinafter set forth.
In Moody, the plaintiff brought suit against various third parties seeking damages for injuries received in a work-related accident. The worker's compensation insurer of plaintiff's employer filed an intervention to recover benefits paid to the plaintiff. The plaintiff ultimately obtained a judgment in his favor but received nothing because the award was insufficient to pay his attorney's contingency fee and the claim for reimbursement of worker's compensation benefits by the worker's compensation insurer. Hence, a dispute arose over the apportionment of the proceeds of plaintiff's judgment between the claim of plaintiff's attorney and the claim of intervenors for reimbursement of worker's compensation benefits.
In fashioning a judicial remedy, the Louisiana Supreme Court reasoned that a worker who has been injured by a third party tortfeasor and the employer who pays compensation because of the injury become co-owners of a right to recover damages from the third person. Moody, supra, at 1085.
*160 The court concluded that each co-owner is obligated to bear a portion of "reasonable and necessary" litigation expenses and attorney's fees proportionate to their interest in the recovery. Id. at 1085, 1086.
The court set forth the following guidelines for the allocation of these expenses and fees between the employer and worker from the worker's recovery against a third party:
"First the court must determine the employer's proportionate interest in the recovery by determining the ratio or percentage that the amount of compensation paid or due at the time of recovery bears to the total recovery. For example, in the present case, in which the compensation paid is $49,286.23 and the total recovery is $82,303.72, the employer's proportionate interest in the recovery is calculated as follows:

Employer's reimbursement = Employer's share
Recovery from third person of recovery
$49,286.23 = 59.88%
----------
$82,303.72

Accordingly, because the employer has a 59.88% interest in the recovery, 59.88% of the cost of the recovery should be assessed to him. Reciprocally, the worker has a 40.12% interest in the recovery and is therefore bound to pay 40.12% of the cost of recovery." (Footnote omitted.) Moody v. Arabie, 498 So.2d 1081, at page 1086 (La.1986).
Plaintiff herein, through his motion against intervenors herein, sought to apportion his unreimbursed litigation expenses and attorney's fees. Intervenors argue on appeal that the doctrine formulated in Moody is inapplicable in the present case because their attorney spent an identical amount of time as plaintiff's attorney and because they also incurred substantial attorney's fees and unreimbursed litigation expenses on their own behalf. We are not persuaded by this argument. Defendants, Jones, Travelers, and Lalande, stipulated liability and insurance coverage in excess of plaintiff's claim. The remaining issues for trial before the jury were plaintiff's comparative negligence, if any, and the negligence, if any, of the DOTD. Intervenors chose to employ separate counsel even though some of the defendants admitted liability, there was clearly adequate insurance coverage for the claim, and a recovery by plaintiff in the low range of anticipated quantum verdicts would have fully repaid intervenors for the worker's compensation benefits and medical expenses they had paid up to the date of trial. All parties stipulated the amount of worker's compensation benefits that intervenors had paid and did not dispute and stipulated the amount of most of the medical expenses that intervenors had paid. The plaintiffs bore the overwhelming financial risk in the prosecution of the case as reflected by the reimbursable litigation expenses the trial judge allowed to plaintiffs and intervenors. As co-owners of the right to recover damages, intervenors were obligated to contribute to the legal services and litigation expenses necessary to preserve their right of recovery. The mere fact intervenors chose to hire separate counsel should not bar plaintiffs from demanding contribution, based on intervenors' share of recovery, under the rationale of Moody. We recognize that there are situations where the action of the employer and worker's compensation insurer, who intervene in a plaintiff's suit seeking reimbursement of worker's compensation benefits, will materially contribute to plaintiff's recovery and entitle them, together with plaintiff's counsel, to an award of attorney's fees, but we do not find that to be the situation in this case. The attorney's fee must "... relate to necessary services which actually benefited or augmented recovery from the third person...". Moody, supra, at 1086. The Louisiana Court of Appeal has stated that:
"We believe that in this, the [Supreme] court has instructed the trial judge to make a determination of which services provided by plaintiff and intervenor were necessary for maintaining the action. Those which the intervenor provided which contributed to the recovery, and which were not duplicative in nature, should be credited against the employer's share of recovery." Major v. Cotton's,

*161 Inc., 551 So.2d 57, at page 60 (La.App. 1 Cir.1989).
We do not find that intervenors' attorney's action in this case actually benefited or augmented plaintiff's recovery from third persons. See, e.g., Denton v. Cormier, 556 So.2d 931 (La.App. 3 Cir.1990), where intervenors were allowed to recover for some of their attorney's fees because their activities contributed to the prosecution of the case. We find that the service of the attorneys for intervenors in this case did not materially contribute to Jaffarzad's recovery.
The trial court in its apportionment of unreimbursed litigation expenses and attorney's fees calculated intervenor's share at 65%. The trial court was of the opinion that this percentage represented an equitable adjustment for the additional work and responsibility of Jaffarzad's attorneys. This calculation was clearly erroneous in light of the legal principles set forth in Moody. The trial judge fixed and allowed Jaffarzad's total unreimbursed litigation expenses of $16,925.15 and intervenors' total unreimbursed litigation expenses of $643.28. Neither plaintiffs nor intervenors, in their briefs to this court, contest the trial court's determination and allowance of these amounts as the correct unreimbursed litigation expenses of each party which contributed to the prosecution of plaintiff's claim.
Utilizing the formula established in Moody, we would calculate intervenors' share of the total unreimbursed litigation expenses as follows:

Amount of Intervenors' claim = Intervenors' percentage
---------------------------------
Total recovery from third persons share of recovery
 $131,554.78 (+ additional credits due)
 -----------
 $450,000.00 = 29%
 $ 16,925.15 Plaintiff's litigation expenses
 + 643.28 Intervenors' litigation expenses
 -----------
 $ 17,568.43 Total litigation expenses
 × 29% Intervenors' percentage share of recovery
 -----------
 $ 5,094.84 Intervenors' share of litigation expenses

In determining what constitutes a "reasonable attorney's fee," the court in Moody stated that courts must follow the guidelines of the Code of Professional Responsibility. The Second Circuit, Louisiana Court of Appeal has interpreted the guidelines in Moody to mean that a court may consider an attorney/client contract in fixing the attorney's fees, but that the court is not necessarily bound by such a contract. Herrington v. Mayo, 550 So.2d 745 (La. App. 2 Cir.1989); See also, Denton v. Cormier, supra; Samanie & Barnes v. Lawler, 517 So.2d 340 (La.App. 1 Cir.1987); Mini Togs Products, Inc. v. Wallace, 513 So.2d 867 (La.App. 2 Cir.1987), writ den., 515 So.2d 447 and 515 So.2d 451 (La.1987). Plaintiffs had a contingency fee contract with their attorneys providing for a fee of 33 1/3% of all sums recovered. The trial judge found that the contingency fee was reasonable. We also find, after reviewing the facts of this case, that the contingency fee of 1/3 contracted with plaintiffs' attorney, is a reasonable and adequate fee, particularly in view of the guidelines set forth in the Code of Professional Responsibility.
We now turn to the apportionment of attorney's fees using the formula set forth above in Moody. This calculation results in apportionment of attorney's fees as follows:

 $450,000.00 Total Judgment
 -131,554.78 Amount of Intervenors' Claim
 -----------
 (+ additional credits due)
 $318,445.22 Net Judgment Recovered by Plaintiff
 × 33.33 % Plaintiff's attorney's contingent
 -----------
 fee contract for one-third (1/3)
 $106,148.41 Plaintiff's Attorneys Fees
 × 29 % Intervenors' percentage share of recovery
 -----------
 $ 30,783.04 Intervenors' share of attorney's fees

Intervenors' proportionate share of the unreimbursed litigation expenses would be $5,094.84 and its proportionate share of attorney's fees would be $30,783.04. The plaintiff therefore would be entitled to be reimbursed by intervenors the total sum of $35,877.88 for litigation expenses and attorney's fees. These calculations, by which we have determined intervenors' share of litigation expenses and attorney's fees, are based on the amount of intervenors' claim of $131,554.73, which was stipulated at the time of trial.
This claim of $131,554.73, however, does not include any credit for future worker's compensation benefits which the intervenors received pursuant to La.R.S. 23:1103. Moody requires such a credit be *162 added to determine intervenors' full recovery because the intervenors no longer have any future compensation liability. The intervenors are absolved from further compensation payments and the amount of intervenors' full recovery, to be used in calculations under the Moody formula, must reflect this credit. This requirement has now been legislatively overruled by La.R.S. 23:1103(C), but was required by the existing law at the time plaintiff's accident occurred.
Accordingly, we are unable to calculate the correct total amount of the intervenors' full recovery and must remand to the trial court for the limited purpose of determining the intervenors' credit. This credit must be added to the intervenors' stipulated claim to determine the intervenors' total share of recovery before a correct apportionment of litigation expenses and attorney's fees can be made under the Moody formula.
For the above and foregoing reasons the decision of the district court is affirmed in part, reversed in part, amended in part, recast in part, and the matter is remanded.
Judgment is rendered in favor of plaintiff, Bahrooz Jaffarzad, and against defendants, Jones Truck Lines, Inc., Travelers Insurance Company, and David R. Lalande, in solido, in the full amount of $450,000.00, together with legal interest from date of judicial demand until paid.
Judgment is further rendered in favor of intervenors, Shop Rite, Inc. and Louisiana Employers Safety Association Self Insurers Fund, in the sum of $131,554.78, to be paid with preference out of the judgment rendered in favor of Bahrooz Jaffarzad against Jones Truck Lines, Inc., Travelers Insurance Company, and David R. Lalande, in solido, with legal interest from date of judicial demand on the amount of the intervention. See Chatelain v. Project Square 221, 505 So.2d 177 (La.App. 4 Cir.1987), writ den., 508 So.2d 71 (La.1987).
The matter is remanded to the district court for the limited purpose of determining the amount of intervenors' credit for future worker's compensation benefits, and to then determine and fix intervenors' portion of litigation expenses and attorney's fees in accordance with the instructions contained in this opinion, and to render judgment for said sums in favor of Bahrooz Jaffarzad and against intervenors, Shop Rite, Inc. and Louisiana Employers Safety Association Self Insurers Fund, in solido, to be paid from the judgment of intervention rendered herein in intervenors' favor against Bahrooz Jaffarzad.
Judgment is further rendered in favor of plaintiff, Farah Samuti Jaffarzad, and against defendants, Jones Truck Lines, Inc., Travelers Insurance Company, and David R. Lalande, in solido, in the sum of $10,000.00, with legal interest from date of judicial demand, until paid.
All costs of this appeal are taxed against defendants, Jones Truck Lines, Inc., Travelers Insurance Company, and David R. Lalande.
AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; AND REMANDED.
NOTES
[1] Intervenors' claim for reimbursement totaled $131,554.78 as of the date of judgment. The $119,714.85 actually awarded intervenors represented the $131,554.78 as reduced by the 9% comparative fault assessed against plaintiff. By subsequent amendment to the original judgment the trial judge ruled that the intervenors' claim could not be reduced because of Jaffarzad's comparative negligence and awarded intervenors the full amount of their claim for reimbursement.
[2] Since the law and relevant facts are common to both appeals our opinion here is equally applicable. However, we render a separate judgment on the appeal of Shop Rite, Inc. and the Louisiana Employer's Safety Association Self Insurer's Fund in Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 162 (La.App. 3 Cir.1990).
[3] Mr. Harry was accepted by the court as an expert in traffic engineering. He received a Bachelor of Science in Civil Engineering from the University of Southwestern Louisiana in 1963 and has been employed by DOTD for 24 years. During that time he has attended numerous seminars and workshops in his field of expertise. Harry explained that traffic engineering involves signing, signals, or pavement markings and studies associated therewith, such as traffic counts, speed studies, and accident analysis. Further, he has worked with accidents in the last 23 years and has performed accident reconstruction over that period of time.

Dr. Bernard received a Bachelor of Science from the University of Southwestern Louisiana and a Master's degree and PhD in physics from Rice University. He further testified that he has been accepted as an expert in the fields of accident reconstruction, physics, and the physics of accidents by numerous State and Federal District Courts throughout the State.
[4] Shop Rite, Inc. and the Louisiana Employer's Safety Association Self Insurer's Fund appeal in Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 162 (La.App. 3 Cir.1990).