533 So.2d 46 (1988)
Dennis R. PEARCE and Terry L. Pearce, Plaintiffs-Appellants-Appellees,
v.
POWER AND TELEPHONE OF KENTUCKY, INC., Central La. Telephone Company, Inc., and Century Telephone Enterprises, Inc., Defendants-Appellants-Appellees.
No. 87-658.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
Rehearing Denied November 21, 1988.
*47 Dan B. McKay, Jr., Bunkie, for plaintiffs-appellants-appellees.
William R. Boles, Jr., Monroe, Peter J. Lemoine, Bunkie, defendants-appellants-appellees.
Before DOMENGEAUX, KNOLL and KING, JJ.
KING, Judge.
There are two issues presented by this appeal. The first is whether or not the trial court was correct in finding that plaintiffs were subcontractors rather than employees of defendants and entitled to additional compensation for work performed outside the scope of their original contract. The second is whether defendants were entitled to damages resulting from plaintiffs' faulty work.
Dennis R. Pearce and his brother, Terry L. Pearce, (hereinafter plaintiffs) filed suit against defendants, Power and Telephone of Kentucky, Inc. (hereinafter Power), Central Louisiana Telephone Company, Inc. (hereinafter Central) and its parent company, Century Telephone Enterprises, Inc. (hereinafter Century), to recover for labor and services. Defendants filed a reconventional demand for damages claiming that plaintiffs breached their contract by faulty work. After trial on the merits, the trial court rendered judgment in favor of one of the plaintiffs-defendants in reconvention for $330.00 and against defendants-plaintiffs in reconvention. A written judgment was signed. Plaintiffs appeal seeking an increase in the amount awarded by the trial court and defendants appeal seeking reversal of plaintiffs' judgment against them and judgment on their reconventional demand against plaintiffs. We affirm.

FACTS
Plaintiffs, Dennis R. Pearce (hereinafter Dennis) and his brother, Terry L. Pearce (hereinafter Terry), are telephone cable splicers by trade. In the summer of 1985, Dennis contracted for his services with defendant, Power. Power had been contracted by defendants, Central, and its parent company, Century, to install and repair underground and aerial telephone cables located in Avoyelles Parish, Louisiana.
Dennis had previously worked for Power on another cable splicing job in Mississippi and was offered work on the Louisiana job contracted by Power with Central. Larry Sprouse, President of Power, called Dennis in Tennessee and offered to pay him on a per-unit basis, and not by the hour as he was previously paid in Mississippi. Dennis agreed and came to Cottonport, Louisiana to meet T.L. Lewis, who was in charge of the new construction project. Dennis testified that when he arrived in Cottonport, Louisiana, there were no splicing supplies with which he could start work, so he borrowed enough supplies from a friend in Bunkie, Louisiana and began the project.
After working on and off for about a month, for a total of about 86 hours, Larry Sprouse contacted Dennis and informed him that, for safety reasons and to expedite completion, it was necessary for Dennis to keep a man on the job at least six days a week. Dennis was unable to do this and had originally planned to work only on weekends on the Cottonport project. Dennis testified that at this time he also realized he could not work for the per-unit price basis which he had agreed upon earlier, especially since there would be no payment until the project was complete and tested. Dennis complained to Larry Sprouse about not being able to stay on the job without an advance to cover his expenses. Sprouse advanced Dennis $1,000.00 to induce him to remain on the job. Shortly thereafter, Dennis, unhappy with the per-unit price agreement, quit the job and returned to Tennessee.
Within a week, Sprouse had contacted Dennis and requested him to return and complete the job. Dennis refused to do so, but his brother, Terry, offered to complete the job for Dennis. Sprouse agreed to this arrangement.
Terry testified that when he spoke with Sprouse about resuming Dennis' work, he *48 was promised a rate of $15.00 per hour for the work and not the per-unit prices to which Dennis had agreed. Terry left Tennessee for Cottonport, Louisiana, with his fiance, whom Terry intended to train as a helper. Terry stated that when he arrived he found a shortage of supplies which caused a delay of a few days before he could begin work. When Terry began work on the job, he stated that he had to check some of Dennis' work and re-do some of his splices. Terry testified and produced documents indicating that he had worked a total of 639 hours on the job, but that when it was completed, he was told to convert the working hours into a per-unit cost basis. He stated that he thought this request was bizarre because he thought he was getting paid by the hour. Terry was told that final payment for the job would not take place until all of the wires spliced by him, Dennis, and their helpers were tested and Dennis had submitted the final bill on a per-unit basis.
After waiting several days for this testing to take place, Terry left the project and returned to Tennessee to get a tester so that he could begin testing the splices himself. Upon his return, Terry was told that he could not test the splices by himself, and that an engineer's presence was needed to verify the correctness of the work on the cables. As there were no engineers available at that time, Terry left Louisiana and returned to Tennessee.
Before leaving Louisiana, Terry sought legal advice concerning what action to take to obtain the monies owed to him and Dennis. After discussing their options with Dennis, Terry returned to Louisiana to sign a lien affidavit in the amount of $6,711.40 representing the amounts he claimed were owed to both him and his brother, Dennis. The lien was filed and recorded in the record of Avoyelles Parish, Louisiana. After an impasse was reached regarding the amount owed to the plaintiffs, they filed suit in December, 1985, naming Power, Central, and Century as defendants. The purpose of the suit was to recover the amount allegedly owed to them as set forth in the lien affidavit. Power answered the plaintiffs' suit with a general denial and reconvened against them for $8,500.00. This amount allegedly represented the cost of the work necessary to re-do the faulty and defective work performed by both plaintiffs. Central and Century answered plaintiffs' suit and cross-claimed against Power in the event Central and Century were cast in judgment to plaintiffs. Plaintiffs later amended their petition alleging that they were employees of Power and increased their demand to reflect unpaid amounts of $1,199.70 and $10,240.35 owed to Dennis and Terry respectively as employees. Plaintiffs' amended suit further requested penalties and attorney's fees as provided for by LSA-R.S. 23:631-632. Power later amended its reconventional demand to seek a total of $9,532.72 in damages plus another $23,503.00 in general damages.
After a trial on the merits, the trial judge granted judgment against defendant, Power, and in favor of Terry, but only for $330.00, plus interest. This sum was granted because it was shown at trial that Terry had performed 22 hours of non-contract work, resplicing a "live" cable which had been accidentally cut by a third party. Although Power admitted that it had agreed to pay Terry $15.00 an hour for this emergency job, Power disputed Terry's testimony that it took him 22 hours and claimed it only took him 6 hours. The trial judge gave Terry the benefit of the doubt, and granted him a total of 22 hours at $15.00 an hour, or $330.00. The trial court found that Terry had assumed Dennis' perunit price agreement with Power to finish the work and found no basis for Terry's claim that he was to be paid a straight $15.00 per hour for the work.
Plaintiffs' remaining claims, Power's reconventional demand, and Central's and Century's cross-claims, were all dismissed and plaintiffs' lien ordered cancelled. The trial judge assigned one-half of the court costs to Dennis and one-half to Power.
From this judgment, all parties have appealed. Plaintiffs seek the original amount sought by their cancelled lien, and Power seeks reversal of the judgment in favor of plaintiffs and judgment on its reconventional *49 demand for the cost of repairing the faulty and poor workmanship done by the plaintiffs.

LAW
In his written reasons for judgment the trial judge summed up the major deficiency in this entire lawsuit, a failure of proof because of a lack of documented evidence and business records. In his reasons for judgment, the trial judge stated:
"Gentlemen, I've had occasion in thirty years of law practice, and two and a half years as a Judge, to be involved in a number of these contract disputes; and they're always very difficult. One of the reasons is, when things start going bad on a job, the emphasis turn toward getting it completed and getting it done, and not with an eye toward keeping the kind of records you might wish you'd kept later on when it ends up in the courtroom. So, once it ends up in the courtroom, we just have to do the best we can with what we have, and I'm saying that because there are many areas where it's just figures that are thrown up at one time or another, without really adequate proof to support that."
In reviewing the exhibits and testimony in the record before this court, we agree that there was a lack of adequate record keeping on the part of any party, particularly the plaintiffs.
The plaintiffs have urged the following eight assignments of error in their effort to modify the trial judgment:
(1) The trial court erred in admitting into the record numerous items of hearsay evidence;
(2) The trial court erred in finding that the agreement between the parties was a sub-contract;
(3) The trial court erred in finding that the "sub-contract" was breached;
(4) The trial court erred in failing to follow the rules of substantial completion of a building construction contract, and/or of quantum meruit;
(5) The trial court erred in placing the burden of proof on the plaintiff to show that they should be paid, after expressly finding that the defendants failed to prove the alleged costs of completion;
(6) The trial court erred in failing to recognize and uphold the rules of placing a contractor in default prior to an attempt at completion by the owner or general contractor;
(7) The trial court erred in failing to award penalties and attorney's fees under La.R.S. 23:631-632; and
(8) The trial court erred in accepting Mr. T.L. Lewis as an expert in the area of work at issue in the case.
Assignment of error number one pertains to testimony and documents that were allegedly made by others not a party to the suit. Plaintiff argues that, over his objection, certain hearsay evidence in the testimony was admitted into the record.
Hearsay is evidence of an unsworn, out-of-court statement, made by a person, other than the testifying witness, which is introduced to establish the truth of its contents. State v. Franklin, 520 So.2d 1047 (La.App. 3 Cir.1987). Hearsay is not admissible when objected to in a court of law because its efficacy cannot be tested with the absence of the alleged utterer. There are instances when hearsay can be admitted over objections. First, the testimony must seem to be reliable, there must be minimum prejudice to the objecting party, and the admission must clarify testimony before the court. The reliability of the hearsay is for the trial judge to determine based on its need, importance, and prejudice to the parties.
As stated previously, there was adequate evidence presented that the plaintiffs' work was re-done by Power. Obviously, Power would not re-do the plaintiffs' work in an attempt to avoid paying them when the cost to re-do the work was higher than the initial agreement with the plaintiffs. While some of the testimony presented in this case may fall within the parameters of the definition of hearsay, it was not prejudicial to plaintiffs' suit; it came from sources that the trial judge felt were reliable and the testimony helped to clarify the techniques required in splicing *50 telephone cables. Any error in admitting such testimony was harmless. See Herdman v. Smith, 707 F.2d 839 (5th Cir.1983); Peters v. Atlanta Inter. Ins. Co., 469 So.2d 421 (La.App. 3 Cir.1985), writ den., 474 So.2d 949 (La.1985); LaSalle Pump & Sup. Co. v. La. Midland R. Co., 433 So.2d 745 (La.App. 3 Cir.1982), writ den., 435 So.2d 450 (La.1983).
This assignment of error is without merit.
The second and seventh assignments of error pertain to the type of agreement into which plaintiffs and Power entered. Plaintiffs' first petition alleged they were subcontractors; later, their petition was amended to allege they were employees of Power and that they were entitled to penalties and attorney's fees for non-payment of wages to an employee under LSA-R.S. 23:631-632. The trial judge found that despite the prohibition of sub-contractors in the main contract between Central and Power, Power had sub-contracted out some of the splicing work to the plaintiffs. The trial judge stated in his reasons for judgment that:
"I find that there was a sub-contract entered into with Dennis Pearce, as was originally alleged. And, this is based upon the normal factors that are looked into in determining the difference between an employee and a contractor, subcontractor in this case. That is, the criteria, or thethe most important is the matter of control. You just don't deal with a sub-contractor in the same manner as you do with an employee; day-to-day punching the clock, total hour-to-hour supervision, like you do with an employee. We didn't have that type of supervision in this case. The Unit price method again suggested no tax withholding, no FICA withholding. Many many factors point to a sub-contract situation, and I have no difficulty whatever in arriving at that conclusion. It was also interesting to note that Mr. Smith from Century, hisof course, his opinion does not substitute for the court's, but according to his criteria, this type of a working arrangement constituted a sub-contract."
On appeal plaintiffs argue that defendants' Exhibit Number 1, the alleged subcontract between Dennis and Power, is a unilateral contract, signed by Dennis, but never formally accepted by Power. Dennis obviously accepted the contract by his commencing work. The document is very clear that the agreement between Dennis and Power was for a per-unit price, and not hourly as an employee would be paid. Additionally, and perhaps most importantly, the record is clear that Power had no control over plaintiffs' work, that Power did not withhold any taxes out of the payment to Dennis, and that plaintiffs were not subject to any direct supervision by Power. The law is quite clear in determining which status should apply to a worker under similar circumstances. Perhaps the most cited case is the case of Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972). In that case the court stated the following in its reasons for judgment:
"It is well understood by the Courts of this State that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. The relationship presupposes a contract between the parties, the independent nature of the contractor's business and the nonexclusive means the contractor may employ in accomplishing the work. Moreover, it should appear that the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
The law further recognizes that inquiry to determine whether a relationship is that of independent contractor or that of *51 mere servant requires, among other factors, the application of the principal test: the control of the work reserved by the employer. In applying this test, it is not the supervision and control which is actually exercised which is significant, the important factor is whether, from the nature of the relationship, the right to do so exists." (Citations omitted.) Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385, at pages 390-391 (1972).
Subsequent cases have relied upon the Hickman case and are in accord with the holding of the Supreme Court in Hickman to the effect that the most important factor is the appearance of a right to control. See e.g., Hemphill v. State Farm Ins. Co., 472 So.2d 320 (La.App. 3 Cir.1985).
The finding that the plaintiffs were not employees is supported by the testimony of T.L. Lewis, the supervisor of Power, who testified that Dennis only worked when he wanted to work, which was only a few weekends at the most. Dennis' testimony parallels that of Lewis on this point. Additionally, the helpers that Dennis brought with him were not the employees of Power. Dennis stated that he expected to pay his splicing helpers out of his own pay, based upon his per-unit price agreement.
The remaining question on this issue is whether or not Terry was permitted to assume Dennis' contract or whether he was hired, as he alleges, as an employee of Power to be paid hourly. The trial court found that, considering the relationship of the brothers, Terry had assumed his brother's contract with Power, and held that Dennis had assigned his contract with Power to Terry.
Terry's argument that he was told he would be paid $15.00 an hour is not supported by the evidence. Larry Sprouse testified that he had only one sub-contract to splice the cable and that sub-contract was with Dennis. Additionally, Sprouse presented testimony that it was customary to pay on a per-unit basis for new construction projects and that only on repair jobs would a subcontractor be paid by the hour. Finally, Terry admitted that he eventually agreed to accept payment by the per-unit basis in lieu of an hourly wage.
We do not find that the trial court was manifestly in error in its conclusion. These assignments of error are without merit.
Assignments of error three through six are grouped together for analysis, as they all pertain to whether or not plaintiffs' workmanship was substandard, requiring defendants to correct the defects. They also relate to Power's reconventional demand. In addition to a general damage claim Power also sought $9,532.72 in their reconventional demand against the plaintiffs. This is the total amount allegedly required to pay other splicers hourly to correct plaintiffs' faulty and unworkmanlike performance. This amount was set forth in Defendants' Exhibit 3, an invoice sent to Dennis for the cost of re-doing his work.
The focal point of the inquiry as to whether or not the proof was adequate centered upon the issue of the quality of plaintiffs' work and what percentage of this work, if any, was defective. Most of the plaintiffs' objections to hearsay pertain to the admission of evidence relative to the claim of plaintiffs' defective work. Some of the alleged hearsay was elicited in response to questions asked by plaintiffs' attorney.
The trial court, finding that there was a sub-contract between Dennis and Power, and that Power allowed Terry to assume the contract, also found that there was a breach of the contract based upon the poor quality of work rendered by plaintiffs. Dennis first actively breached the contract with Power by leaving the job site and refusing to return. We assume that this breach was "overlooked" by Power, by allowing Terry to continue the work, but we still find, by a preponderance of the evidence in the record, that there was a passive breach of the contract because plaintiffs' rendered poor quality work to the defendant, Power.
Tom Gullet, an employee of 27 years with Central, testified that he monitored *52 the plaintiffs' work through Mr. James Austin, an engineer for the construction project, and Mr. T.L. Lewis, job superintendent for Power. Gullet testified that he had occasion to inspect two of the pedestals on the Big Cane exchange where the plaintiffs had spliced some cut cable. His testimony regarding this is as follows:
"Q. Why did you have occasion to inspect some of the work, some of the splicing work that was done?
A. O.K., there was a cable cut one afternoon, like the following morning in the Town of Big Cane, I had a lot of trouble and then I found out what I had, the cable was spliced wrong.
"Q. O.K., specifically, what was done wrong?
A. It waswe call it, `pair-for-pair,' or `bundle-for-bundle.' The bundles are reversed, which means, at that location, everything from that cut cable to the bend was wrong-lined or the customer didn't have service.
Q. O.K., and did you have problems with any customers being put out of service as a result of this work?
A. Yes, sir, I did."
Gullet further testified that plaintiffs had also improperly placed some of the bonding in the pedestals.
T.L. Lewis also testified regarding the necessity of having to correct some of plaintiffs' splices. When asked on direct examination what was wrong with plaintiffs' work that required it to be corrected, defendant objected, claiming that the question required an opinion of an expert which Mr. Lewis was not qualified to answer. Mr. Lewis was tendered in an attempt to qualify him as a splicing expert. The trial court accepted Mr. Lewis as an expert in construction, but not in cable splicing, and allowed him to testify in this respect as follows:
"A. First of all the bonding was too high on the cables; it was bonded too high in the peds. At the time that we looked at it, we didn't know of all the scotch lock problems that we were having, or that we were going to have.
Q. Explain what scotch lock problems were that you found.
A. That'sthis fits on the end of the two cables, and if you mash it, it clamps down a pair, a straight pair.
Q. What problems did you find?
A. A lot of these weren't clamped; we found some crossed pairs....
Q. Which is what?
A. Wires crossed. I think out of three hundred pair cable lead in the CO, we had to think it was almost five hundred trouble spots in it."
Larry Sprouse testified regarding the necessity of having to hire outside help to correct plaintiffs' work. Sprouse identified an invoice allegedly sent to plaintiffs itemizing the cost of correcting their work.
In reviewing the record, we find plaintiffs' main complaint to the hearsay objections, and to references made by the witnesses, were relative to findings made by Rural Electrification Administration (REA) representatives and telephone company engineers. Neither of these parties was called to testify. Plaintiffs argue that defendants' failure to call the REA representative, the governmental agent in charge of approving or rejecting new telephone construction, and the failure of defendants to call the telephone engineer, who rejected plaintiffs' work, weakens defendants' claim that plaintiffs' work was defective. Defendants argue that plaintiffs' failure to also call these same witnesses strengthens their claim that plaintiffs' work was defective. In either case, the trial court found that the failure to call these parties prevented the receipt of evidence relevant to all parties' claims.
In reviewing the totality of the evidence presented, we find there was a breach of the contract between the plaintiffs and Power. Although substantially complete, much of the work performed was defective. It cost Power more to correct plaintiffs' work than Power owed to plaintiffs. Lastly, the trial court believed Power's controverted testimony that it gave Terry the *53 opportunity to return and correct this work, but that Terry refused. We do not find the trial court to be manifestly in error in its conclusions.
We find no merit to assignments of error numbers three through six.
Plaintiffs' assignment of error number eight pertains to the trial court's qualification of Mr. T.L. Lewis as an expert in the field of telephone construction supervision. The defendant tendered Mr. Lewis as an expert in cable splicing. After examination the court accepted Lewis as an expert in telephone construction and not in cable splicing. Lewis testified that he had four to five years experience in the telephone construction field and had additional experience in television cable construction. In 1985, at the time of the cable construction, Lewis was Power's superintendent over the entire job. He stated that plaintiffs spliced cable junctures that later required correcting. When asked about "why they had to be re-done," plaintiff objected stating that this was a question calling for an opinion which Lewis was not qualified to give. After Lewis was tendered as an expert, the trial court only qualified Lewis as an expert in the area of telephone construction. Lewis was then permitted to testify about the deficiencies in the plaintiffs' wiring and splicing technique in the cable construction. Plaintiffs argue on appeal that there was trial court error in qualifying Lewis as an expert and permitting his testimony.
Trial judges in Louisiana have great latitude in determining whether or not a person possesses the requisite background and experience to be considered as an expert. State v. Boyer, 406 So.2d 143 (La.1981). Generally, an appellate court places great weight on a trial court's ruling on relevancy of evidence, and such a ruling will not be reversed on appeal unless there has been a clear abuse of discretion. La.R.S. 15:435, 15:441; State v. Kahey, 436 So. 2d 475 (La.1983). In reference to plaintiffs' objection, Lewis testified to facts of the outward appearance of the splicing junctions and stated that as constructed, it was defective. The trial court obviously found that such general observations were well within Lewis' knowledge and experience. Additionally, this court stated in Perkins v. United American Ins. Co., 505 So.2d 206 (La.App. 3 Cir.1987):
"We first note that opinion testimony of a lay witness is generally excluded. However, any witness may testify to opinions or inferences which are based on the rational perception of facts by the witness and are helpful to a clear understanding by the fact-finder of the testimony of a witness or to the determination of a factual issue. Lancon v. Vallot, 459 So.2d 1360 (La.App. 3rd Cir. 1984)." Perkins v. United American Ins. Co., 505 So.2d 206, at page 218 (La. App. 3 Cir.1987).
Perhaps most important is the lack of any prejudice to the plaintiffs by Lewis' testimony. There was clearly sufficient evidence presented that plaintiffs' work was redone for some reason. The plaintiffs failed to present evidence that the work was unnecessarily redone. For these reasons we find no merit in assignment of error number eight.
This court affirms the trial court judgment as rendered. We find there to be no manifest or clear error in the trial court judgment. We also find there was an absence of proof on the part of either party to substantiate and justify the granting of their claims, except the judgment against defendant, Power, and in favor of plaintiff, Terry Pearce, for $330.00, together with legal interest.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be taxed one-half against the plaintiffs-appellants-appellees and onehalf against the defendants-appellants-appellees.
AFFIRMED.