819 So.2d 434 (2002)
David R. RATCLIFF, et al.
v.
Arlene NORMAND, et al.
No. 01-1658.
Court of Appeal of Louisiana, Third Circuit.
June 5, 2002.
*435 Kenneth Lee Riche, Riche Law Firm, Baton Rouge, LA, for Plaintiffs/Appellants, David R. Ratcliff, Mary Ann Rubin.
Jill M. Kraemer, Attorney at Law, Lafayette, LA, for Defendants/Appellees, Safeway Insurance Company, Arlene Normand.
Court composed of HENRY L. YELVERTON, ULYSSES GENE THIBODEAUX, and BILLIE COLOMBARO WOODARD, Judges.
WOODARD, Judge.
This case arose from an alleged car accident between Ms. Arlene Normand and Mr. David Ratcliff, occurring on July 20, 1998, in Alexandria, Louisiana. The trial court determined that Mr. Ratcliff and his guest passenger, Ms. Mary Ann Rubin, the Plaintiffs, failed to meet their burden of *436 proving that an accident ever occurred. They appeal, and we affirm.

* * * * * *
On July 20, 1998, allegedly, Ms. Arlene Normand, rear-ended Mr. David Ratcliff at the intersection of Nelson Street and McArthur Drive, in Alexandria, Louisiana. She was driving Mr. Mark Dupont's, the front seat passenger, 1987 Chevrolet Suburban. Mr. Ratcliff was test-driving, with Ms. Mary Ann Rubin, his guest passenger, a 1997 Oldsmobile Achieva, when he stopped at a yield sign at the intersection of Nelson Street and McArthur Drive. He began to merge onto McArthur, when Ms. Normand drove up behind them. She came to a complete stop. As he moved forward, she, also, moved forward. However, Mr. Ratcliff, suddenly, braked. Nevertheless, Ms. Normand managed to stop the Suburban without hitting the Achieva.
Immediately, Mr. Ratcliff jumped out of his car and accused her of hitting him. In turn, Mr. Dupont, who had gotten out of the Suburban and saw that one to one-and-one-half feet separated the two vehicles, visually inspected the cars and called the police. Although Officer John Dunn, the investigating officer, found no damage to either vehicle and issued no citations, his report indicated that Ms. Normand caused the accident.
Thereafter, Mr. Ratcliff and Ms. Rubin filed claims against Safeway Insurance Company of Louisiana (Safeway), Mr. Dupont's insurer, alleging that an accident had occurred and that they were injured. Subsequently, Safeway assigned Mr. Kenneth Mayeux and Mr. Bob Littleton, two appraisers, to photograph and examine the vehicles. Mr. Mayeux examined the Suburban and did not find any indentations, scuffs, or damage to the bumper or bumper guards. On the contrary, although Mr. Bob Littleton found no damage to the Achieva's bumper during his examination, he noted two small scuff marks on the left corner.
Both of the appraisers testified at trial. Mr. Mayeux found no evidence of any damage to the Suburban's bumper pads or bumper and determined that the black scuff marks on the Achieva could not have come from the Suburban's bumper guards in a rear-end collision, as Mr. Ratcliff and Ms. Rubin described, or even if they had hit at different angles. On the other hand, Mr. Littleton testified that the scuff marks could have come from the Suburban.
On April 18, 2001, this matter went to trial. The trial court concluded that Mr. Ratcliff and Ms. Rubin failed to prove, by a preponderance of the evidence, that an accident occurred and dismissed the suit at the Plaintiffs' cost. They appeal.

* * * * * *

STANDARD OF REVIEW
Mr. Ratcliff alleges that the trial court erred in finding that there were "absolutely no dents or other physical damage on the Oldsmobile or the Suburban, which were connected to this collision," thereby, concluding that the court erroneously held that the Plaintiffs failed to carry their burden of proof. He, also, argues that the trial court erred because all of the involved parties saw a small black scuff mark on the Oldsmobile's bumper. Although the trial court acknowledged the scuff mark, it determined that the evidence did not prove that it was "connected to the collision."
To begin with, in her statement to Claude LeBas, Safeway's adjuster, Ms. Normand stated that, after the alleged accident, she and Mr. Dupont got out of the car and found no damage to it. She continued that "on the car there was a black mark on the bumper where he claims that we hit him. But the bumper on the truck is a chrome bumper," implying that it could not have left the black *437 scuff mark. Furthermore, she indicated that the Plaintiffs told the police that they were fine and suffered no injuries.
Moreover, during his deposition, Mr. Dupont testified that the Suburban did not strike the Achieva, therefore, the impact never occurred. He stated that, after the alleged accident, approximately one-and-one-half feet remained between the cars. Lastly, Mr. Dupont testified that, neither, he, Ms. Normand, Mr. Ratcliff, nor Ms. Rubin needed medical attention.
Finally, Mr. Mayeux, the first appraiser, testified that he examined and photographed the Suburban's front bumper and bumper guards and found no damage. However, Mr. Littleton, the second appraiser, stated that he examined and photographed the Oldsmobile and found no dents or scratches, although he saw two small scuff marks. Nevertheless, both appraisers concluded that, in their expert opinions, the scuff marks on the Oldsmobile's rear bumper could not have come from the Suburban's vertical rubber bumper guards because the measurements did not match, and there was no other damage to the vehicle.
A trial court's finding of fact may be reversed if the reviewing court finds manifest error or that the trial court's decision was clearly wrong.[1] The appellate court must review the trial court's findings to determine if they are reasonable in light of the entire record.[2] In his opinion, the trial judge stated:
From the evidence and testimony given at trial, the court cannot conclude by a preponderance of the evidence that the defendant caused any contact between the vehicles. The defendant's vehicle was a large Suburban and the plaintiffs were in a much smaller Oldsmobile. Both plaintiffs complained of a hard impact, however there were absolutely not dents or other physical damage on the Oldsmobile or the Suburban, which were connected to this collision. Both of the occupants of the Suburban denied that there was any physical contact between the Suburban and the Oldsmobile. Therefore, the court finds that the plaintiff failed to prove the existence of an accident by a preponderance of the evidence and the plaintiff's suit is hereby dismissed.

CREDIBILITY DETERMINATIONS
Next, the trial court made several credibility determinations. When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings, for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.[3] Ms. Rubin testified that she was so shaken up by the hard hit that she wanted to go home; nevertheless, she returned to the dealership, test drove another car with Mr. Ratcliff, and perfected the sale of another vehicle.
Mr. Ratcliff, also, testified that he was quite shaken up by the accident because it caused his eyeglasses, which he needed to drive, to fly off his head and hit the windshield with enough force to break a lense. Nonetheless, he managed to return to the dealership, test drive the other car, and then drive back to Opelousas, without the *438 eyeglasses that he always wore when driving.
Additionally, both, Mr. Ratcliff and Ms. Rubin claimed that the impact caused bruises from their seatbelts, yet, he admits that he, only, saw a little dark spot on the left side of the bumper, about the size of a 50 cent piece, and Ms. Rubin observed a little something and nothing more. Furthermore, neither of them saw any damage to the Suburban.
After reviewing the record, we found, as did the trial court, some discrepancies in the Plaintiffs' testimonies. For example, although Mr. Ratcliff and Ms. Rubin allege that they sustained various injuries which required medication and physical therapy, neither vehicle suffered any damages for which there is any evidence that they would have caused them to sustain such severe injuries. Dr. George Sagrera, their treating physician, stated that, after looking at the cars' photographs, Ms. Rubin's complaints should have been less. He, also, indicated that if counsel proved that the accident did not take place, then, his opinion would change, regarding the causation of her injury. He stated, "It's difficult to say, because this appears to be no injury at all and it doesn'tit doesn't jibe with the story that I understood." This, of course, casts doubt on her veracity. Finally, regarding Mr. Ratcliff, Dr. Sagrera found that he suffered from significant arthritic and degenerative changes that could have been preexisting and, thus, not caused by the alleged accident.
Accordingly, given the evidence and testimony adduced at trial, the trial court concluded that Mr. Ratcliff's and Ms. Rubin's testimonies were not credible enough to prove, by a preponderance of the evidence, that Ms. Normand caused an accident. Consequently, we find that the trial court's findings are reasonable in light of the entire record. As such, we may not reverse, even if we were convinced that, had we been sitting as the trier of fact, we would have weighed the evidence differently.[4]

HEARSAY TESTIMONY
Generally, hearsay is inadmissible if objected to in a court of law because its truthfulness cannot be tested properly in the absence of the alleged utterer.[5] However, hearsay may be admitted, over objections, if the testimony appears to be reliable and if there is a minimum of prejudice to the objecting party.[6] The purported statement of an unavailable party should be excluded if the court finds that it is not trustworthy, not necessary, and proper notice was not given to the opposing party.[7]
First, Mr. Ratcliff and Ms. Rubin argue that the trial court erred by finding Ms. Normand's transcribed statement to be trustworthy. A finding of trustworthiness is required before an out of court statement of an unavailable witness can be an exception to the hearsay rule which La.Code Evid. art. 804(B)(6) provides.[8] Paragraph (A), of the same article, states that "a declarant is `unavailable as a witness' when the declarant cannot or will not appear in court and testify to the substance *439 of his statement made outside of court," and contains a situation which applies to this case:
This includes situations in which the declarant:
. . . .
(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.
Mr. Ratcliff and Ms. Rubin attempted to have Ms. Normand served at the address, listed on the accident report, however, she had moved to Lafayette. Consequently, they tried to get her new address, using the internet. Unable to locate her, they sent a certified letter to the address on the accident report, advising her of the lawsuit. That letter was returned as "not deliverable as address." As such, evidently, Ms. Normand was, continuously, unavailable and subject to La.Code Evid. art. 804's provisions.
Therefore, we begin our analysis of Ms. Normand's statement's trustworthiness. Mr. LeBas took her statement as a part of Safeway's investigation into the accident. She gave her permission for it to be recorded, at the end of which, she acknowledged that she understood all of the questions asked of her and that she answered all of them truthfully. Furthermore, her statement assisted in establishing the events, leading up to and, during the alleged accident. Thus, since Mr. LeBas took her statement before the Plaintiffs filed suit, we find that she had no reason or ulterior motive to distort the truth and, therefore, find her statement to be trustworthy.
Next, we must analyze whether or not her testimony was necessary. As the Plaintiffs could not locate her to give her notice that suit had been filed, her statement is the only testimony available to verify the "accident's" events. Therefore, we find that her testimony was necessary.
Finally, Mr. Ratcliff and Ms. Rubin had to receive notice of Safeway's intent to use the statement. On March 7, 2001, Safeway submitted an exhibit list that included her statement to the court and to opposing counsel. Therefore, these circumstances satisfy the notice requirement.
As all of the requirements barring admission were met, the trial court did not commit a legal error by finding the statement of the unavailable witness, Arlene Normand, to be trustworthy and, thus, admissible.

PHOTOGRAPHS
Lastly, Mr. Ratcliff and Ms. Rubin urge that the trial court erred in relying on the photographs introduced at trial, depicting the cars involved in the alleged accident. Mr. Mayeux's photographs of the Suburban, taken November 5, 1998, were consistent with all of the witnesses' testimonies that the Suburban was not damaged. Mr. Littleton took photographs of the Oldsmobile on February 9, 1999. He found no damage to the rear bumper, although, he observed two small black scuff marks on the left corner of the Oldsmobile's bumper consistent with the scuff mark which both Plaintiffs described. Nevertheless, Mr. Ratcliff and Ms. Rubin failed to object to the photographs' admissibility. The general rule is that a rule of evidence not invoked is waived, and, hence, a failure to object to evidence waives the objection to its admissibility.[9] Therefore, in order to preserve an evidentiary issue *440 for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony and state the reasons for the objection.[10] Having failed to do so, Mr. Ratcliff and Ms. Rubin did not properly preserve this objection for appeal, and there is nothing for this court to review.

CONCLUSION
On July 20, 1998, Ms. Normand and Mr. Ratcliff had an alleged car accident. Mr. Ratcliff and his guest passenger said that they suffered various injuries even though the cars had no damage. From the evidence and testimony adduced at trial, the court could not conclude, by a preponderance of the evidence, that Ms. Normand caused any contact between the cars. As we find the trial court's decision to be reasonable in light of the entire record, we affirm its judgment.
AFFIRMED.
NOTES
[1] Stobart v. State of Louisiana, through DOTD, 617 So.2d 880 (La.1993).
[2] Rosell v. ESCO, 549 So.2d 840 (La.1989).
[3] Canter v. Koehring, 283 So.2d 716 (La. 1973).
[4] Lyons v. Bechtel Corp. & AIU Am., Inc., 00-364, (La.App. 3 Cir. 12/27/00); 788 So.2d 34, writ denied, 01-282 (La.3/23/01), 787 So.2d 996.
[5] Pearce v. Power & Teleph. of Kent., Inc., 533 So.2d 46 (La.App. 3 Cir.1988).
[6] Id.
[7] Cross v. Lake Area Rehabilitation Serv., Inc., 00-224 (La.App. 3 Cir. 10/11/00); 771 So.2d 768.
[8] Id.
[9] LaHaye v. Allstate Ins. Co., 570 So.2d 460 (La.App. 3 Cir.1990), writ denied, 575 So.2d 391 (La.1991).
[10] Id.