Judgment rendered October 6, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,026-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                                    Appellee

versus

BRYNTON KELLI SIMMONS                        Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Webster, Louisiana
Trial Court No. 92349

Honorable Michael Owens Craig, Judge

* * * * *

WHITLEY R. GRAVES, APLC                    Counsel for Appellant
By:  Whitley Robert Graves


JOHN SCHUYLER MARVIN                       Counsel for Appellee
District Attorney

HUGO A. HOLLAND, JR.
JOHN MICHAEL LAWRENCE
Assistant District Attorneys

* * * * *


Before PITMAN, STONE, and STEPHENS, JJ.


PITMAN, J., concurs in the result.

**STONE, J.**

This criminal appeal arises from the Twenty-Sixth Judicial District Court in Webster Parish, the Honorable Michael O. Craig presiding. The defendant, Brynton Kelli Simmons ("Simmons"), was convicted by a unanimous jury of vehicular homicide, as defined by La. R.S. 14:32.1, and was sentenced to 8 years at hard labor with credit for time served from the date of arrest. The defendant now appeals.

For the following reasons, Defendant's conviction and sentence are affirmed.

## FACTS

On October 28, 2016, the defendant, Simmons, and the victim, Kelly Birdwell ("Birdwell"), had a head on collision on LA 157 near the center of the road. Both vehicles were found on the wrong sides of the road, and Birdwell died as a result of the injuries sustained in the crash. The defendant, Simmons, was taken to the hospital for treatment of the injuries he sustained in the crash and received 10 units of morphine and two Percocet pills from medical personnel. The defendant also had alcohol and four other drugs in his system which were not administered by medical personnel; to wit: diazepam, fluoxetine, tramadol, and dextromethorphan.

At the hospital, Trooper Glenn Allen Younger ("Younger") of the Louisiana State Police sought the defendant's consent for a blood test. Simmons refused twice, but eventually consented after Trooper Younger discussed the "pros and cons" of consenting and not consenting. The conversation included Trooper Younger telling the defendant that there could be "jail time" if he refused the test, and that the victim's family might

be able to successfully sue the defendant in civil court if he could not prove that he was not inebriated.

Simmons' blood was drawn by a hospital employee whose name tag bore the designation "RN." Trooper Younger did not remember her exact name, but thought he remembered her name being "Ms. Adams." The defendant's counsel unsuccessfully filed a motion to suppress the blood sample.

At trial, Trooper Younger and Trooper Garrett Monroe testified that they believed a warrant was not necessary because the defendant consented. Both state troopers testified that the defendant was alert, coherent and in his right frame of mind and correctly gave the day of the week and his name. Also, both troopers testified that the defendant gave no sign that the morphine he received from the ambulance personnel affected his ability to understand.

Three trial witnesses who responded to the scene of the accident testified to smelling alcohol inside Simmons' vehicle. The State introduced evidence that the defendant had alcohol and four different drugs in his system and was driving over the center line of the highway at a speed of 70 mph in a 55-mph zone. The State introduced evidence that the defendant's blood alcohol concentration was .07% when his blood was drawn, but testimony from experts in blood alcohol testing concentration and forensic toxicologists estimated that the defendant's blood alcohol concentration was .09 to 0.12% two hours before his blood was drawn and at the time the accident occurred.[1]

_____

[1] The State utilized the toxicology report of Simmons' blood sample at trial, but did not introduce the blood sample itself.

Additionally, the State introduced the defendant's black box data at trial. The black box recorded the last five seconds before impact. For the first three seconds Simmons traveled straight, then suddenly he veered right and then to his left. The trial court accepted Trooper Verhoef as an accident reconstruction expert. Trooper Vehoef testified that the defendant's veer to his right was consistent with trying to avoid a hazard in his lane of travel.

Simmons called Dr. Jeffrey Bennett ("Bennett") as an expert witness. The trial court accepted Dr. Bennett as an expert in pharmacology, but rejected him as an expert in retrograde blood alcohol analysis.

## DISCUSSION

Simmons enumerates four assignments of error, but there are actually five: (1) the evidence was insufficient to convict him because it did not disprove the reasonable hypothesis that the collision was caused by Kelly Birdwell swerving into Simmons' lane; (2) the trial court erred in denying the pre-trial motion to suppress the blood sample; (3) the trial court erred in allowing testimony concerning the blood sample when the person who drew the blood sample did not testify to her qualifications under La. R.S. 32:664; (4) the trial court erred in allowing testimony concerning the blood samples because they were not introduced at trial; and (5) the trial court erred in refusing to recognize Dr. Bennett as an expert in retrograde blood alcohol concentration analysis.

**Sufficiency of the Evidence**

Simmons argues that the evidence at trial was insufficient to support his conviction because it did not disprove the reasonable hypothesis that the collision was caused by Birdwell swerving into Simmons' lane.

3

The standard of review for the sufficiency of the evidence to uphold a conviction is whether viewing the evidence in the light most favorable to the prosecution any, rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Ward*, 50,872 (La. App. 2 Cir. 11/16/16), 209 So. 3d 228, *writ denied*, 17-0164 (La. 9/22/17), 227 So. 3d 827. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. *State v. Ward*, *supra*; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297. On appeal, a reviewing court must view the evidence in the light most favorable to the prosecution and must presume in support of the judgment, the existence of every fact the trier of fact could reasonably deduce from the evidence. *Jackson*, *supra*.

The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Ward*, *supra*. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Ward*, *supra*; *State v. Eason*, 43,788 (La. App. 2 Cir. 2/25/09), 3 So. 3d 685, *writ denied*, 09-0725 (La. 12/11/09), 23 So. 3d 913.

The *Jackson*, *supra*, standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the

4

prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Ward*, *supra*; *State v. Speed*, 43,786 (La. App. 2 Cir. 1/14/09), 2 So. 3d 582, *writ denied*, 09-0372 (La. 11/06/09), 21 So. 3d 299.

To convict a defendant based upon circumstantial evidence, every reasonable hypothesis of innocence must be excluded. La. R.S. 15:438; *State v. Barakat*, 38,419 (La. App. 2 Cir. 6/23/04), 877 So. 2d 223. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Burd*, 40,480 (La. App. 2 Cir. 1/27/06), 921 So. 2d 219, *writ denied*, 06-1083 (La. 11/9/06), 941 So. 2d 35.

At the time of the defendant's arrest, the statute defining vehicular homicide, La. R.S. 14:32.1 provided, in pertinent part:

A. (1) is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exists and such condition was a contributing factor to the killing:

B. The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.

C. The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.

5

D. The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964.

E. The operator is under the influence of alcoholic beverages.

F. The operator is under the influence of a combination of alcohol and one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription.

The defendant, in effect, argues that the evidence was insufficient to prove beyond a reasonable doubt that he proximately caused the victim's death (as required by La. R.S. 14:32.1(A)(1)) because the evidence creates a reasonable hypothesis that the victim swerved into his lane first.

As previously mentioned, Trooper Vehoef testified that the defendant's veer to his right was consistent with trying to avoid a hazard in his lane of travel. However, Trooper Verhoef's testimony does not bear any indication that it was the victim swerving into defendant's lane that caused him to veer right. For example, the defendant could have veered to the right because he was intoxicated and/or not paying attention. A reasonable juror could conclude that something other than the victim swerving into the defendant's lane caused the defendant to initially swerve to the right. Therefore, this assignment of error lacks merit and is rejected.

**Admissibility of evidence related to blood sample**

A. **Constitutional violations**

Simmons argues that the trial court erred in denying his pre-trial motion to suppress the blood sample and evidence derived therefrom. The defendant asserts that Trooper Younger was required to have a search warrant to conduct the blood alcohol test because a blood draw is a search

6

within the meaning of the Fourth Amendment, and Trooper Younger had neither a warrant nor valid consent from the defendant.[2] The defendant argues pursuant to *Birchfield vs. North Dakota*, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016), that his consent to the blood draw was invalid because he was threatened with criminal consequences if he refused.

The Fourth Amendment to the United States Constitution and Article 1, Section 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. The Fourth Amendment of the U.S. Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

To claim the protection of the Fourth Amendment, the claimant must have a legitimate expectation of privacy in the place of search and the expectation must be one that society is prepared to recognize as reasonable. *State v. Boyette,* 52, 411 (La. App. 2. 1/16/2019), 264 So. 3d. 625; *Minnesota v. Olsen,* 495 U.S. 91, 110 S. Ct. 1684, 109 L. Ed. 2d. 85 (1990).

It is well settled that a search and seizure conducted without a warrant issued on probable cause is *per se* unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions

---

[2] The State argues that the warrantless search of taking defendant's blood sample did not require a warrant because at the Motion to Suppress hearing, the State called Trooper Younger who testified that he was trained in recognizing the influence of drugs on people from his training at the Louisiana State Police Training Academy and was a certified as a SFST instructor, certified in ARIDE and DRE. SFST stands for Standardized Field Sobriety Test. Trooper Younger testified at the Motion to Suppress hearing that officers can receive certification in SFST at the academy. He testified that he went further and became a SFST instructor. He also testified that he received ARIDE certification. ARIDE stands for Advanced Roadside Impaired Driving Enforcement. Trooper Younger testified at the Motion Suppress hearing that he furthered his education by becoming a Drug Recognition Expert (DRE).

to the warrant. *State v. Bates*, 51,890 (La. App. 2 Cir. 2/28/18), 246 So. 3d 672; *State v. Thompson*, 02-0333 (La. 4/9/03), 842 So. 2d 330; *State v. Tatum,* 466 So. 2d 29 (La 1985); *State v. Howard*, 49, 965 (La. App. 2 Cir. 6/24/15), 169 So. 3d 777, *af'd*, 15-1404 (La. 5/3/17), 226 So. 3d 419; *State v. Ledford,* 40, 318 (La. App. 2 Cir. 10/28/05), 914 So. 2d 1168.  La. C. Cr. P. art 703 states, "a defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained." This is known as the exclusionary sanction.

A blood draw constitutes a search and a seizure within the meaning of the Fourth Amendment. *Birchfield*, *supra*. Because the officer did not have a warrant authorizing the blood draw, an exception to the warrant requirement must be applicable; otherwise the blood sample must be suppressed. In this case, two exceptions are implicated by the facts: (1) the exigent circumstances doctrine; and (2) consent. We examine the applicability of each of these exceptions to the warrant requirement in turn.

*Exigent circumstances.* Under the exception for exigent circumstances, a warrantless search is allowed if: (1) the police officer has probable cause to arrest or search; and (2) there are exigent circumstances justifying nonconsensual warrantless intrusion. *State v. Magee,* 17-1217 (La. App. 1 Cir. 2/27/18), 243 So. 3d 151. Such exigent circumstances exist if "there is compelling need for official action and no time to secure a warrant." *Missouri v. McNeely,* 569 U.S. 141, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013) *quoting Michigan v. Tyler,* 436 U.S. 499, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978); *State v. Miller*, 53,356 (La. App. 2 Cir. 4/22/20), 295 So. 3d 443.

In *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. (1826), 16 L. Ed. 2d 908 (1966), the United States Supreme Court upheld the warrantless blood test of an individual arrested for driving under the influence of alcohol because the officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Id*. at 770. *Missouri v. McNeely*, *supra*, held that the natural metabolization of alcohol in the bloodstream does not constitute a *per se* exigency that allows an exception to the warrant requirement for nonconsensual blood testing in all drunk-driving cases. *Id*. at 145. Rather, whether a sufficient exigency exists depends on the totality of the circumstances of the case. *Id*.

In *State v. Miller*, *supra*, this Court held that nonconsensual warrantless blood sample taken from the defendant was valid under the doctrine of exigent circumstances. In a rural area around 6:45 a.m., the defendant was operating a motor vehicle and veered across the centerline, thereby causing a collision that killed another person. The officers responding to the accident took 45 to 60 minutes to arrive at the scene.[3] They found Miller unconscious and in critical condition, and quickly became aware that he had swerved into the victim's lane and thereby caused the crash. The officers also discovered that someone had seen Miller driving in the wrong lane of the highway earlier that morning (prior to the crash). This gave them probable cause to believe that Miller had been driving while intoxicated. Because the defendant was unconscious, he could not perform a breath test or undergo a field sobriety test. Thus, the troopers could not

---

[3] This was partly because of the location of the accident and partly because the timing of the accident coincided with a shift change at the responding law enforcement agency.

otherwise obtain proof of the defendant's intoxication. Miller's blood was drawn at 9:04 a.m., right before Miller became unavailable for a blood sample because he was going into surgery. The blood evidence of Miller's intoxication may have been lost if the police waited until after surgery. Accordingly, exigent circumstances existed to justify the warrantless blood sample.

In this case, the exigent circumstances doctrine validates the warrantless taking of the blood sample. Like *Miller, supra,* the defendant was operating a motor vehicle involved in a collision in which a fatality resulted, and his vehicle was found across the center line. Three witnesses testified that they smelled alcohol coming from the defendant's vehicle. Like the defendant in *Miller*, Simmons was injured in the wreck and was taken to the hospital for that reason. Trooper Younger testified that when he arrived at the hospital he performed the standard Horizontal Gaze Nystagmus ("HGN") test, and the defendant showed all six of the signs of intoxication identifiable from an HGN test. As mentioned earlier, Trooper Younger is certified in SFST, ARIDE and DRE. The defendant admitted to Trooper Younger that he had been drinking, and the defendant confirmed that in his own testimony.[4] These facts amply supplied Trooper Younger with probable cause to believe that Simmons had been driving while intoxicated in causing the wreck. Also, like in *Miller*, the blood sample was taken two or three hours after the accident. Given the evanescence of intoxicants in the bloodstream, Trooper Younger faced the risk that if he did not act quickly,

---

[4] During the Motion to Suppress hearing the defendant took the stand. The defendant admitted that he initially lied to Trooper Younger in saying that he had not been drinking.

proof of Simmons' vehicular homicide would be lost. Accordingly, we hold that the exigent circumstances doctrine validates the warrantless taking of the blood sample in this case. For this reason alone, this assignment of error lacks merit and is rejected.

*Consent.* The defendant argues that, pursuant to *Birchfield, supra,* his consent to the blood test was invalid because Trooper Younger "coerced" him.

A warrantless search conducted pursuant to valid consent is permitted by the Louisiana and United States Constitutions. *State v. Boyette,* 52, 411 (La. App. 2 Cir. 1/16/19), 264 So. 3d 625. For consent to search to be valid, it must be given freely and voluntarily, *i.e.,* in circumstances that indicate the consent was not the product of coercion, threat, promise, pressure or duress that would negate the voluntariness. *Id.*

*Birchfield, supra,* does not support the defendant's argument. The defendant fails to acknowledge that *Birchfield, supra,* explicitly declined to hold that the threat of criminal prosecution for refusal to be tested for intoxication renders consent invalid. We decline to hold that Trooper Younger giving Simmons what amounts to bad legal advice invalidated Simmons' consent.

Furthermore, Simmons argument that his intoxication invalidated his consent also lacks merit. Both State Troopers testified that the defendant was alert, coherent and in his right frame of mind and correctly gave the day of the week, and his name. Both Troopers testified that the defendant gave no sign that the morphine he received from the ambulance personnel affected his ability to understand. Although the defendant was in pain and had taken ten milligrams of morphine, he was coherent and alert enough to sign the

11

consent form for treatment at the hospital roughly fifteen or twenty minutes before Trooper Younger arrived to get the defendant's version of the accident. This assignment of error lacks merit. The defendant's consent to the search was valid.

### B. **La. R.S 32:661**

Additionally, the defendant argues that the trial court erred in denying his pre-trial motion to suppress the blood alcohol results because Trooper Younger failed to comply with the implied consent statute, La. R.S. 32:661. However, La. R.S. 32:661, which only applies to defendants who are under arrest, does not apply to this case because the defendant was *not* under arrest. Therefore, Trooper Younger did not have to inform the defendant of any rights under La. R.S. 32:661. This argument lacks merit.

### C. **Qualifications of Person Drawing the Blood**

The defendant asserts that the trial court erred in allowing testimony concerning the blood samples when the person who drew the sample did not testify about her qualifications under La. R.S. 32:664.

Our review of the record shows that the State did provide testimony that a qualified person drew the defendant's blood sample. Trooper Younger testified that he witnessed the woman who drew the blood sample from Simmons, and that she had the designation "RN" on her name tag; and that he believed her name to be Mrs. Adams. Therefore, the State adequately proved that a registered nurse is the person who drew the blood.

### D. **Testimonial Evidence regarding Blood sample not Introduced at Trial**

The defendant asserts that the trial court erred in allowing testimony concerning the blood sample because the blood sample itself was not

12

introduced at trial. The defendant cites no authority for this proposition. In our research, we have found no such authority, and we are unwilling to create any. This assignment of error lacks merit.

### E.  **Qualification of Dr. Bennett as an expert**

The defendant asserts the trial court's ruling denying expert witness status to Dr. Bennett as an expert in retrograde extrapolation of alcohol elimination rate was an error. Admissibility of expert testimony in Louisiana is governed by La. C. E. art. 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:
>
> 1.   The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> 2.   The testimony is based on sufficient facts or data;
> 3.   The testimony is the product of reliable principles and methods; and
> 4.   The expert has reliably applied the principles and methods to the facts of the case

The trial court has great discretion in determining the competence of an expert witness, and that determination will not be overturned absent an abuse of discretion. *State v. Castleberry,* 758 So. 2d 749 (La. 1999); *State v. Bourque,* 622 So. 2d 198 (La. 1993); *State v. Trahan,* 576 So. 2d 1 (La. 1990). Trial judges are thus afforded "great latitude" in deciding whether a proffered expert has the competence, background and experience to testify as an expert. *Clement v. Griffin,* 634 So. 2d 412 (La. App. 4 Cir. 1994); *Pearce v. Power & Tel. of Kentucky, Inc.,* 533 So. 2d 46 (La. App. 3 Cir. 1988). Although such discretion is not absolute, the decision to qualify an expert witness may not be reversed in the absence of clear error. *Clement v.*

*Griffin,* 634 So. 2d 412 (La. App. 4 Cir. 1994); *Breeden v. Valencia, Inc.,* 557 So. 2d at 302 (La. App. 4 Cir.1990).

Initially, the defendant tendered Dr. Bennett as an expert in pharmacology, not retrograde extrapolation blood analysis. Dr. Bennett testified regarding his qualifications as follows: (1) he holds a Bachelor of Science in biology and a minor in chemistry degree from Louisiana Tech University in Ruston; (2) he also holds a Bachelor in Science in pharmacy from the University of Louisiana at Monroe, formerly known as Northeast Louisiana University; and (3) Doctor of Pharmacy or PharmD from the University of Arkansas. Dr. Bennett testified that he did not take any classes on retrograde extrapolation, but he did purchase several sources to educate himself on the subject. Furthermore, Dr. Bennett admitted on direct examination that he had never testified as in expert on retrograde extrapolation and testified that he has never taught any classes on retrograde extrapolation to his pharmacological students, and that he did not recall any questions regarding extrapolation on the pharmacy test. We cannot say the trial court abused its vast discretion in not accepting Dr. Bennett as an expert in retrograde extrapolation of alcohol.

## CONCLUSION

For the foregoing reasons, the defendant's conviction and sentence are **AFFIRMED.**